In the Matter of the Accounting of ELLEN LEONARD, as Administratrix with the Will Annexed of BRYAN McCAHILL, Deceased.

KATHERINE MAJOR, Individually and as Administratrix with the Will Annexed of ANNIE V. McMAHON, Deceased, et al., Appellants; ELLEN LEONARD et al., Respondents.

Testamentary trusts — whether a trust has been created by a provision of a will must be determined by the substance of such provision and the duties imposed thereby — held, upon examination of a provision of a will relating to the investment of the shares of certain legatees, that it did not give them an absolute interest in such shares but created trusts for their lives and that a contingent provision in favor of brothers and sisters of a niece did not extend to the issue of a deceased brother and sister but the legacies passed to surviving nephews and nieces of the testator — held, further, that appellants have failed to show a prior adjudication in bar.

1. The question whether a trust has been created by a given provision or not is to be determined by a consideration of the substance of such provision and of the steps and duties which are imposed thereby.

2. Decedent died leaving him surviving a widow, a number of nephews and nieces, but no children or descendants of children. He left a will, the eleventh clause of which provided for sale of his real and personal estate, and after paying legacies that the proceeds be divided equally between his nephews and nieces named therein. The same clause further directed that the shares of certain of the nieces theretofore named should be invested by his executors in bond and mortgage, and the interest thereon paid to said nieces respectively semi-annually, and in case any of them should die without issue, then her share should be divided equally among her brothers and sisters, and in case of the death of any of them leaving issue, the interest on her share should be divided equally between her children during minority, and upon their attaining the age of twenty-one years the principal should, in the same manner, be divided equally between them; that if any niece should die

without leaving issue or brothers and sisters, her share should revert to the general fund of his estate, to be divided equally among the testator's remaining nephews and nieces. *Held*, that the provision for the nieces named in the eleventh clause, whose shares are directed to be invested, did not give them an absolute interest in the shares created for them respectively, but simply created trusts for life with the principal to be disposed of at death as in said clause provided. *Held, further*, that the contingent provision in favor of surviving brothers and sisters of a niece leaving no issue did not extend to issue of such a brother and sister who died before her, but that the principal is to be paid over to such nephews and nieces as survived, and that the issue of one who had predeceased a niece does not take the share which his parent would have taken if surviving.

3. On examination of the pleadings and judgment in an action in the Supreme Court brought by the executors of the deceased, *held*, that the appellants, upon whom the burden rested of showing that there was a prior adjudication of the questions now before the court, have failed in their attempt so to do.

*Matter of Leonard*, 168 App. Div. 12, affirmed.

(Submitted May 23, 1916; decided July 11, 1916.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered July 24, 1915, which modified and affirmed as modified a decree of the New York County Surrogate's Court construing the will of Bryan McCahill, deceased, and directing distribution of a certain share of his estate.

The facts, so far as material, are stated in the opinion.

*Charles Meyers* for appellants. The 11th clause did not create a trust life estate in favor of Annie McMahon. (*Mullarki* v. *Sullivan*, 136 N. Y. 227; *Matter of Conger*, 81 App. Div. 493.) Gift of their shares to the nieces having been directly and when first mentioned without any limitation, the gift cannot be cut down by any subsequent ambiguous phrase. (*Trask* v. *Sturges*, 170 N. Y. 482; *Clark* v. *Leupp*, 88 N. Y. 228; *Roseboom* v. *Roseboom*, 81 N. Y. 356; *Campbell* v. *Beaumont*, 91 N. Y. 464; *Benson* v. *Corbin*, 146 N. Y. 351.) The direction to the

executors to invest the share of the legatees was the gift merely of a power to manage for a time the funds of these shares. (*Post* v. *Hover*, 33 N. Y. 593; *Robert* v. *Corning*, 89 N. Y. 225; *Henderson* v. *Henderson*, 113 N. Y. 1; *Steinway* v. *Steinway*, 163 N. Y. 183.) If the legacy to the nieces did not vest in them at the death of the testator, then they took life estates with remainders contingently vested in them or their own issue in the shares of their brothers and sisters. (*Hennessey* v. *Patterson*, 85 N. Y. 91; *Matter of Brown*, 93 N. Y. 295; *Whitney* v. *Whitney*, 63 Hun, 59; *Swan* v. *Packer*, 161 App. Div. 511.) If the share of Annie V. McMahon did not vest in her at the death of the testator, but she only took a life estate, and she having died without leaving issue, brothers or sisters, and although leaving descendants of deceased sisters her surviving, this court should determine that the share reverted to the general fund of testator's estate to be divided equally among testator's remaining nephews and nieces, then all of the other nephews and nieces named in the 11th paragraph of the will, who survived the testator, now alive, and the descendants or next of kin of those who had since died are entitled to participate in the distribution of said fund. (*Bowditch* v. *Ayrault*, 138 N. Y. 222; *Matter of Dewey*, 153 N. Y. 63; *Tobias* v. *Ketchum*, 32 N. Y. 319; *Ward* v. *Ward*, 105 N. Y. 68.)

*Clifford C. Roberts* and *Frederick N. Gilbert* for Ellen Leonard et al., respondents. The interest of Annie V. McMahon was under no circumstances more than for life. (*Wells* v. *Wells*, 88 N. Y. 323; *Mee* v. *Gordon*, 187 N. Y. 400; *Salisbury* v. *Slade*, 160 N. Y. 278; *Close* v. *Farmers' Loan & Trust Co.*, 195 N. Y. 92; *Higgins* v. *Downs*, 101 App. Div. 119; *Matter of Wiley*, 111 App. Div. 590; *Swan* v. *Parker*, 161 App. Div. 511; *Matter of Haight*, 51 App. Div. 310; *Kirk* v. *McCann*, 117 App. Div. 56; *Sullivan* v. *McCann*, 124 App. Div. 126; *Hill*

v. *Guaranty Trust Co.*, 163 App. Div. 374.) On the death of Annie V. McMahon the remainders limited upon her life took effect. (*Matter of McCahill*, 29 Misc. Rep. 450.) The phrases " dying without issue " and " die without leaving issue or brothers or sisters " refer to the death of a life beneficiary whenever it occurs. (*Vanderzee* v. *Slingerland*, 103 N. Y. 47; *Matter of N. Y., L. & W. R. R. Co.*, 105 N. Y. 89; *Washbon* v. *Cope*, 144 N. Y. 287; *Matter of Lehrbach*, 139 App. Div. 28; *Swan* v. *Packer*, 161 App. Div. 511; *Buel* v. *Southwick*, 70 N. Y. 581; *Tyson* v. *Blake*, 22 N. Y. 559; *Fowler* v. *Ingersoll*, 127 N. Y. 472; *Mead* v. *Maben*, 131 N. Y. 255; *Matter of Denton*, 137 N. Y. 428; *March* v. *March*, 186 N. Y. 99; *Matter of Farmers Loan & Trust Co.*, 189 N. Y. 202.) The remainders are contingent. (*Matter of Baer*, 147 N. Y. 348; *Matter of Cane*, 164 N. Y. 71; *Gilliam* v. *Guaranty Trust Co.*, 186 N. Y. 127; *Salter* v. *Drowne*, 205 N. Y. 204; *Nelson* v. *Combe*, 18 N. J. L. 27; *Turner* v. *Withers*, 23 Md. 41; *State* v. *Fowler*, 66 Conn. 294.) The decree of 1873 is not controlling on the disposition of the remainder interests. (*Matter of McCahill*, 29 Misc. Rep. 450; *Matter of Haight*, 51 App. Div. 310; *Kent* v. *McCann*, 117 App. Div. 56; *Sullivan* v. *McCann*, 124 App. Div. 126; *Hill* v. *Guaranty Trust Co.*, 163 App. Div. 324.) The Supreme Court judgment is not controlling on the disposition of the remainder interests. (*Mooney* v. *Mooney*, 10 Misc. Rep. 387; *Russell* v. *Place*, 94 U. S. 606; *People ex rel. Bridgeman* v. *Hall*, 104 N. Y. 170; *Clark* v. *Scoville*, 198 N. Y. 279; *Lewis* v. *O. N. & P. Co.*, 125 N. Y. 341; *Knapp* v. *Krane*, 14 App. Div. 121; *Keene* v. *Townsend*, 64 Hun, 567; *Bell* v. *Merrifield*, 109 N. Y. 202; *Stokes* v. *Foote*, 172 N. Y. 327.)

*Albert Ritchie* for Thomas J. McCahill, individually and as executor of Thomas J. McCahill, deceased, respondent. The 11th clause of the will created a life estate in favor of Annie McMahon. (*Robert* v. *Corning*, 89 N. Y.

225; *Morse* v. *Morse*, 85 N. Y. 53; *Legett* v. *Perkins*, 2 N. Y. 297.) The rule that an estate given without limitation should not be cut down by subsequent and ambiguous language has no application here. (*Mee* v. *Gordon*, 187 N. Y. 400; *Wells* v. *Wells*, 88 N. Y. 323.) The interest of the brothers and sisters of Annie McMahon in her share of the estate was contingent as to each of them on his or her surviving said Annie McMahon. (*Matter of McCahill*, 29 Misc. Rep. 450; *Matter of Crane*, 164 N. Y. 71; *Salter* v. *Drowne*, 205 N. Y. 204; *Matter of Baer*, 147 N. Y. 348; *Paget* v. *Melcher*, 26 App. Div. 12; 156 N. Y. 399; *McGillis* v. *McGillis*, 154 N. Y. 532.) The legal representatives of the nieces and nephews of the testator, who died before Annie McMahon, are not entitled to take. (*Matter of Crane*, 164 N. Y. 7; *Schlereth* v. *Schlereth*, 173 N. Y. 444; *Robinson* v. *Martin*, 200 N. Y. 159; *Mullarky* v. *Sullivan*, 136 N. Y. 227; *Rauhafer* v. *Realty Co.*, 143 App. Div. 237; *Schwartz* v. *Rehfuss*, 129 App. Div. 650; 198 N. Y. 585.)

HISCOCK, J. Bryan McCahill died leaving him surviving a widow, no children or descendants of children, and sixteen nephews and nieces. He left a will which in addition to making certain specific bequests contained clauses which are of varying importance in the disposition of the questions presented on this appeal.

One of these provided as follows: " *Second.* I give and bequeath unto my wife Bridget McCahill the house and lot owned by me known as Number One Hundred and Forty-five East Forty-ninth Street, in the City of New York, together with all the household furniture * * * during the natural life of said Bridget McCahill, and on her decease the proceeds arising on the sale of said house and furniture to be divided equally between my nephews and nieces hereinafter named, the survivor or survivors of them. I also give and bequeath to my wife Bridget McCahill an annuity of one thousand two hundred Dol-

lars per annum to be paid by my executors, quarter-yearly in advance commencing at my decease."

The ninth clause provided: "I give, devise and bequeath to my executors and survivor or survivors of them, the sum of Fifteen hundred dollars per annum during the lifetime of my executors James Brady and Thomas J. McCahill and the survivor of them, in trust nevertheless for them to pay for the education of young men who wish to study for the Catholic Priesthood, such young men to be selected by my executors."

The eleventh clause, most important of all, provided: "Immediately after my decease, I direct that all my real and personal estate be sold at public auction by my executors hereinafter named and after paying the legacies above mentioned, the proceeds thereof be divided equally between my nephews and nieces, etc., Ellen McCahill and Mary McCahill, the children of my brother James, deceased; Mary McMahon, Kate McMahon, Margaret McMahon, Philip McMahon, Jr., Annie McMahon and Ellen McMahon, children of my sister Margaret McMahon; Thomas J. McCahill, Margaret T. Mullane, Bernard F. McCahill, Terrence J. McCahill and Ellen McCahill, children of my brother Terrence, deceased; James Brady and Terrence Brady, children of my sister Rose Brady; James McCahill, son of my brother Patrick, deceased, in equal shares, share and share alike. My nephew Terrence Brady, being now absent and should he remain so absent for the next five years his share is to go to his brother James Brady. The shares, however, of my nieces, Ellen McCahill, now Ellen Leonard; Mary McCahill, now Mary Curtin, Mary McMahon, now Mary Dorian; Kate McMahon, Margaret McMahon, Annie McMahon and Ellen McMahon, I direct my executors to invest in bond and mortgage, and the interest thereon of the several shares to be paid them semi-annually, and in case of any of the above named nieces dying without issue, then her share shall be divided equally among her

brothers and sisters, and in case of the death of any of them leaving issue, the interest on her share shall be divided equally between her said children, and upon their attaining the age of twenty-one years the principal shall in the same manner be divided equally between them. Should any of my nieces, however, die without leaving issue or brothers and sisters, then her share is to revert to the general fund of my estate, to be divided equally among my remaining nephews and nieces. I direct, and it is my will, however, that my nephew, Bryan McCahill, shall not receive any share of my estate, real or personal, at my decease, he having already received what I consider his just share of the same."

After the death of the widow one of the seven nieces mentioned in the will, Annie McMahon, died leaving her surviving no issue or brothers or sisters, but leaving her surviving descendants of brothers and sisters who had died after the testator, and certain of the sixteen nephews and nieces mentioned in the testator's will, and also issue of some of said nephews and nieces respectively who had died intermediate the deaths of the testator and of said Annie McMahon. Under these conditions the two questions are presented, *first*, as to the disposition of the share created for the benefit of said Annie McMahon under the eleventh clause of her uncle's will as an original and open question, and, *second*, whether such disposition is now controlled either by two decrees in Surrogate's Court or a judgment of the Supreme Court as binding adjudications even though we should disagree with the conclusions embodied in said decrees or judgment.

Taking up these questions in the order stated, the first inquiry is as to the nature of the interest which Annie McMahon took in the share created for her benefit by said clause, it being urged by some of the appellants that she took an absolute and unqualified interest which permitted her to dispose of the same by will, while other parties insist that her only interest was under a trust of

the share which directed the interest thereof to be paid
to her for life.   We do not think that there can be any
serious dispute over this question.   While the first words
of the eleventh clause do by themselves import a division
amongst the nephews and nieces including Annie
McMahon of shares with absolute ownership, these words
are so intimately connected with subsequent ones appli-
cable to the cases of the nieces that all are to be consid-
ered as a single provision in determining the interest
taken by a niece, and there is no opportunity for the
application of the rule which declares that where an abso-
lute estate has been given under one complete provision
of a will it will not be regarded as cut down by another
and subsequent one unless the intent so to do is very
clear.   Here there is not one provision giving an absolute
estate and another one purporting to cut it down, but vari-
ous directions embraced in the same clause and all of
which are to be construed together as one provision in deter-
mining the interest of a niece.   Thus construed we have
no hesitation in determining that the provision for the
various nieces named in this clause did not give them an
absolute interest in the shares created for them respec-
tively, but simply created trusts for life with the princi-
pal to be disposed of at death as in said clause provided.

It is true that the specific word " trust " is not employed
in dealing with these shares, but it has often been said
that this is not essential to the creation of a trust and
that the question whether a trust has been created by a
given provision or not is to be determined by a considera-
tion of the substance of such provision and of the steps
and duties which are imposed thereby.   When we apply
this test to the clause in question it is very evident that
the share of Annie McMahon was bequeathed to the per-
sons designated as executors in trust to hold and invest
and pay the income to the beneficiary during life.

Adopting this theory, we then come to a more difficult
question involving the disposition of said share on the

death of said life beneficiary. Both the surrogate and the Appellate Division took the view with which we agree, that the contingent provision in favor of surviving brothers and sisters of a niece leaving no issue did not extend to issue of such a brother and sister who died before her. But, passing to the next contingency, the learned surrogate reached the conclusion that the principal was to be distributed amongst the issue of such of the testator's nephews and nieces named in this clause as died prior to Annie, leaving such issue, as well as amongst surviving nephews and nieces. The Appellate Division, on the other hand, took the view that the principal was to be paid over to such nephews and nieces as survived Annie McMahon and that the issue of one who had predeceased her did not take the share which his parent would have taken if surviving.

We agree with the latter view. The only provision in favor of said nephews and nieces is contained in the clause " Should any of my nieces, however, die without leaving issue or brothers or sisters, then her share is to revert to the general fund of my estate, to be divided equally among my remaining nephews and nieces."

If, as we think to be the case, this entire clause is to be construed as an ordinary provision directing conversion of an estate into money and payment to and distribution thereof among a certain class on the death of the beneficiary for life under a trust estate, it is well settled that no interest vests until the death of the life tenant occurs and that the distribution will be to those of the class then surviving. (*Matter of Crane*, 164 N. Y. 71; *Salter* v. *Drowne*, 205 N. Y. 204.)

It is argued that within the terms of the entire will are to be found indications of an intent upon the part of the testator which renders the ordinary "pay over" rule, as it is called, inapplicable and that the purpose of the testator was that this principal should be distributed amongst all of his nephews and nieces named in this clause,

the share of any one dying before the time arrived for distribution to be paid to such issue.   Without discussing these arguments at length it may be said that they do not seem to us to present sufficiently substantial and satisfactory reasons for making this case an exception to the general rule which has been stated.   On the other hand, if we follow them we fear we should build up some more artificial and visionary distinctions and add some more perplexities to those which already surround the interpretation of wills.   The will before us was unskillfully drawn and in various places it contains words which are not entirely appropriate to any theory which ought to be applied to its interpretation and this condition perhaps gives weak support to some interpretation other than that being adopted by us.   But we think that the will as a whole does better sustain the application of the general rule which we have stated than of any recognized exception to that rule, and this being so the general rule should be applied rather than an unnatural exception engrafted upon it.

We now come to the second question whether we are prevented from giving to this will the construction which we think it should receive because certain surrogate's decrees and a judgment of the Supreme Court hereinbefore referred to or either of them are binding adjudications upon the questions now before us and embody different determinations thereof than those just stated.

It does not seem to be very seriously contended by any of the parties that the two decrees made in Surrogate's Court affecting this estate are such adjudications.   They were respectively made on accountings by the executors in respect of other interests under the will, and it is conceded by the appellants that such adjudications would not be controlling upon a future accounting for another share.   Moreover, the last of these decrees if binding at this time would be in support of the views which we entertain rather than of opposing ones.

In the determination of this question of a prior adjudication we are, therefore, substantially left to a consideration of the judgment of the Supreme Court. An action was brought by the executors of McCahill setting forth the clauses already quoted in favor of his wife, the latter's death, the disposition by them of the house and lot in which she had a life estate, and that there remained in their hands a certain sum of money realized upon such sale and also the principal sum invested to provide for the payment of the annuity created for her under the will, and which moneys on account of her death they were anxious to distribute and also setting forth the eleventh clause of said will hereinbefore considered and various facts arising thereunder in connection therewith and asking instructions of the court as to the distribution of the proceeds of the sale of the house and lot and of the principal created for the purposes of the annuity given to the wife, and whether said latter fund became part of the residuary estate to be paid over to the nephews and nieces under the eleventh clause of the will, and if so, in what manner, and also whether the interest of the nieces in said funds could be paid to them or should be held in trust for life.

The court found various facts covered by the allegations of said complaint, and also that a fund had been created for the purpose of carrying out the provisions of the ninth clause of the will hereinbefore quoted for an annual sum of $1,500 to be expended for the education of young men for the priesthood, and then the conclusions of law were, and the judgment provided, so far as is material here, that the proceeds of the sale of the house and lot and the principal of the annuity created for the benefit of the wife should be distributed amongst nephews and nieces and the respective issue of nephews and nieces, and which nephews and nieces were amongst those named in the eleventh clause, although they were

not described as such in the judgment and findings, and no reference in the latter was made to said clause. Of course this action related to and provided for the distribution of different funds than those which are in terms covered by the eleventh clause, which we are now considering. It is possible that in adjudging the distribution of said funds said judgment might have passed at least one of them, the principal for the widow's annuity, into and through the residuary estate created by the eleventh clause, and thus have necessitated an interpretation of that clause. On the other hand, it is conceivable that the trial judge may not have deemed this to be necessary. He may have decided that the principal of the annuity which was created by the same clause as that which gave the use of the house and lot to the wife was to be distributed in the same manner as the proceeds of the house and lot, and which distribution was provided for by the same clause which gave the house and was not at all dependent on the eleventh clause. As a matter of fact it is difficult to determine on what theory the judgment which was rendered could have been reached. It is sufficient to say that it does not appear on the face of the findings or of the judgment that the eleventh clause now before us was construed in reaching the results which were adopted. If we are at all correct in our views of the clause it never could have been adopted as the guide and authority justifying the distribution which was then made. Under these circumstances, we think that the appellants upon whom the burden rested of showing that there was a prior adjudication of the questions now before us have failed in their attempt so to do. As confirming this view it is significant that one of the decrees in Surrogate's Court, made after the judgment in the action, and which unquestionably involved a construction of the eleventh clause adopted a method of distribution radically opposed to that adopted in the action in Supreme Court and it is not

to be believed that such a course would have been followed by the surrogate if it had appeared or had been understood that the questions which he was considering had already been passed on and the clause interpreted in such action.

In accordance with these views, we think that the order of the Appellate Division should be affirmed, with costs, and the case remitted to the Surrogate's Court for distribution of the share here involved in accordance with the views expressed.

WILLARD BARTLETT, Ch. J., CHASE, CUDDEBACK, HOGAN, CARDOZO and POUND, JJ., concur.

Order affirmed, etc.