In the Matter of the Petition of VERONICA M. KOHLER
et al., as Executors of and Trustees under the Will
of CHARLES KOHLER, Deceased, Respondents and
Appellants.

In the Matter of the Accounting of VERONICA M. KOHLER
et al., as Executors of and Trustees under the Will
of CHARLES KOHLER, Deceased, Respondents and
Appellants.

OLGA V. FLORMAN et al., Appellants; NILS K. FLORMAN,
Respondent and Appellant.

**Will — action for construction of will and for an accounting
by executors and trustees of testator — provisions creating
testamentary trusts, construction and validity thereof —
powers and duties of executors as trustees thereunder.**

1. In this proceeding to construe the will of decedent and for an
accounting by his executors and trustees, it appears that the will
does not recognize with any accuracy the distinction that exists
between the duties and authority of an executor and a trustee. The
language of the will relating to the testator's personal representatives
should, therefore, be considered with reference to the duties to be
performed and not as if used by the testator in its technical meaning.

2. The clause of the will by which the testator authorized his
trustees to continue the business owned and carried on by him refers
to his individual business and intended to distinguish between the
business so carried on by him individually and his interest in incor-
porated business by reason of his holding stock in the corporations
conducting the same, since the individual influence and ultimate
control by a majority stockholder does not in itself constitute in any
proper sense a business owned and carried on by such stockholder.
The language does not justify the conclusion that the testator intended
that his executors and trustees should interfere with the officers and
directors of the several corporations in which the testator had stock,
or that it was the purpose and intention of the testator to authorize
or direct the executors to enter upon the conduct of any business
other than the one at the time of his death owned and conducted
by him individually.

3. There is no direction in the will for an illegal suspension of the
power of alienation, and nothing therein that directs an accumulation

23

of interest, or that expressly contravenes the statutes relating to real or personal property.

4. The duty of forming the trusts provided for by the will. should now be performed as of March 16, 1915. The trustees in forming the trusts will make reasonably sure that the amount set aside for the trusts will be sufficient under all reasonable circumstances to provide a net income sufficient to make the payments to the widow and the three daughters respectively, and any income which may have accumulated between March 16, 1915, and the date when the trusts are actually set up, or which may be produced after the trusts are set up in excess of what has been required or may be required to make said annual payment of income provided by the will, should be treated as part of the net residuary estate and be paid over under clause 18 thereof.

5. The trust provided by the fourth subdivision of the eighth paragraph of the will terminates with the death of testator's widow, and there is no gift of the remainder interest in the principal of that trust fund. The principal of that trust fund belongs to the residuary legatees subject to the trust. Any surplus of income, if any, thereon belongs to and should be divided among the residuary legatees.

6. The $300,000 to be paid to each of the children at the times as stated cannot be accumulated by setting aside an amount which would under an agreed rate of interest produce the amounts for the payments as stated. A trust which provides for the accumulation of income to pay annuities is invalid as for any other purpose not specifically permitted by statute. When such amounts are set aside it will be the duty of the trustees to invest such several sums as other trust funds are invested. There is no provision in the will for the payment of any interest that may be received on these several amounts.

7. As it is not provided that these trusts be formed from real property, the direction to hold the several amounts for the payments to the daughters when they arrive respectively at twenty-five, thirty-five and forty-five years of age are valid limitations of an expectant estate, and as the income is undisposed of and no valid direction for the accumulation of the income is given, such income should be paid to the persons presumptively entitled to the next eventual estate, and such persons are the daughters respectively. The income, therefore, on that part of the trust funds held to pay the amounts directed to be paid to the daughters as they arrive at the ages of twenty-five, thirty-five and forty-five years respectively, should be paid to them from the date as of which the trusts are formed.

8. The surplus of income, if any, on that part of the trust funds other than the part held for the payment of the amounts to the

daughters when they arrive respectively at twenty-five, thirty-five and forty-five years of age, should be paid to the persons presumptively entitled to the next eventual estate in such part of the trust funds. It does not include any surplus of income accruing on the trust estates after the trusts have been separated from the gross residue and have become new and independent funds.

9. It cannot be said that the testator intended that the amounts set aside out of the gross residuary estate, as the shares or portions thereof sufficient for the purpose of producing the income to be paid to the daughters, as provided by the eighth paragraph of the will, should remain uncertain, varying or shifting amounts. Sufficient amounts should be set aside for the purposes, as provided by the eighth paragraph of the will, and the amounts so set aside are by the testator given upon the death of his daughters, respectively, to their issue, respectively, share and share alike.

10. The persons presumptively entitled to the next eventual estate, so far as the trust funds for the purpose of providing the $25,000 a year to each of the children is concerned, are the persons entitled to such trust funds upon the death of the daughters respectively. ( *United States Trust Co. of N. Y.* v. *Soher*, 178 N. Y. 442, distinguished.)

*Matter of Kohler*, 193 App. Div. 8, reversed.

(Argued March 8, 1921; decided May 31, 1921.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered July 9, 1920, modifying and affirming as modified a decree of the New York County Surrogate's Court, in a consolidated proceeding, pursuant to section 2535 of the Code of Civil Procedure, for the construction of the will of Charles Kohler, deceased, and for an accounting by his executors and trustees. The appeal is taken by the executors and trustees and by each and every person interested in the construction of the will and the accounting of the said executors and trustees.

*Frederick Collin* and *John B. Stanchfield* for Olga V. Florman, appellant. The purely executorial duties and functions were to take possession of and conserve all the goods and assets of the testator and sell, manage and control them; to collect the outstanding debts; to pay

from the personal estate, if of sufficient value, the debts, expenses and legacies and to produce a residuary to be disposed of or be distributed by them under the order of the surrogate as directed by the will. (*Steinway* v. *Steinway*, 163 N. Y. 183; *Bischoff* v. *Yorkville Bank*, 218 N. Y. 106; *Drake* v. *Price*, 5 N. Y. 430; *Blood* v. *Kane*, 130 N. Y. 514; *Wager* v. *Wager*, 89 N. Y. 161; *Dox* v. *Blackenstose*, 12 Wend. 541; *Schmittler* v. *Simon*, 101 N. Y. 554; *Matter of Hawley*, 104 N. Y. 250; *Wood* v. *Brown*, 34 N. Y. 337; *Tobias* v. *Ketchum*, 32 N. Y. 319.) The duties and functions arising from the trust power and power in trust were incidental and auxiliary to those of the executorial trust. The duties and functions of the two capacities were inseparably blended and commingled without a severance. (*McAlpine* v. *Potter*, 126 N. Y. 285; *Johnson* v. *Lawrence*, 95 N. Y. 154; *Matter of Slocum*, 169 N. Y. 153; *Mott* v. *Ackerman*, 92 N. Y. 539.) The trusts have not been initiated. There is no trust estate; no fund, property or subject-matter subjected to the trust or intrusted to them or concerning which they have exercised trusteeship. Where there is not a trust estate there cannot be a trustee. (*Cluff* v. *Day*, 124 N. Y. 195; *Matter of McDowell*, 97 Misc. Rep. 306; 178 App. Div. 243; *Matter of Estate of Hood*, 98 N. Y. 363; *Olcott* v. *Baldwin*, 190 N. Y. 99; *Jewett* v. *Schmidt*, 83 App. Div. 276; *Close* v. *Farmers Loan & Trust Co.*, 195 N. Y. 92; *Matter of Slocum*, 169 N. Y. 153; *Hall* v. *Hall*, 78 N. Y. 535; *Hood* v. *Hood*, 85 N. Y. 561; *Matter of Martin*, 124 App. Div. 793; *Matter of Underhill*, 35 App. Div. 793; *Johnson* v. *Lawrence*, 95 N. Y. 154; *Matter of Ziegler*, 168 App. Div. 735.) The court should direct the distribution of the surplus income between the three daughters pursuant to paragraph " eighteenth " of the will. (*Brock* v. *Poor*, 216 N. Y. 387; *Manson* v. *Curtis*, 223 N. Y. 313.) The trustees are bound, in virtue of the testator's instructions, to take from the residuary as it existed on March 16, 1915, the date of the decree

declaring the residuary, for each trust fund a sum or assets sufficient to produce the annuities payable from it. (*Matter of Willets*, 112 N. Y. 289; *Griffen* v. *Keese*, 187 N. Y. 454; *Collister* v. *Fassitt*, 163 N. Y. 281; *Cuthbert* v. *Chauvet*, 136 N. Y. 326; *Matter of Wilkin*, 90 App. Div. 324; *Matter of Haviland*, 49 Hun, 301; 124 N. Y. 640; *Whitson* v. *Whitson*, 53 N. Y. 479; *Pierrepont* v. *Edwards*, 25 N. Y. 128; *Matter of Dewey*, 153 N. Y. 63.) The income from each trust fund, when formed, in excess of the annuities to be paid from the fund, will pass into and become of the residuary. (*Fitchie* v. *Brown*, 211 U. S. 321; *Hendricks* v. *Hendricks*, 3 App. Div. 604; 154 N. Y. 751; *Hoadley* v. *Beardsley*, 89 Conn. 290; *Robertson* v. *Hatfield*, 244 Penn. St. 84; *Griffen* v. *Keese*, 187 N. Y. 454; *Matter of Willets*, 112 N. Y. 289; *Merriam* v. *Merriam*, 80 Minn. 254; *May* v. *Bennett*, 1 Russ. 370; *Henderson's Estate*, 228 Penn. St. 405.)

*Timothy Murray* for Vera M. Kohler et al., appellants. The trustees, in applying the sum of $581,224.01 reported as surplus income in the executors' account to the corpus of the estate, exceeded their powers, and these infants are not estopped from objecting thereto, and the sum is now distributable among the three children of the testator. (*Matter of O'Reilly*, 59 Misc. Rep. 142; *Matter of Bannin*, 142 App. Div. 436; *Matter of Hunt*, 41 Misc. Rep. 73; *Bowditch* v. *Ayrault*, 138 N. Y. 231; *Bailey* v. *Safe Deposit Co.*, 213 N. Y. 525; *Matter of Hurlburt*, 51 Misc. Rep. 263; *Thorn* v. *De Breteuil*, 179 N. Y. 64.) The so-called distribution of the sum of $4,427.917.71 among four trust funds, as set forth in the account, is ineffective and void, and no trusts have been erected. (*Griffen* v. *Keese*, 187 N. Y. 454.) Income in excess of the requirements of paragraph 8 of the will falls into the residuary estate, and is distributable among the residuary legatees, the three daughters of the testator. (*Dodge* v. *Pond*, 23 N. Y. 69.)

*Addison A. Van Tine* for Veronica M. Kohler, individually, appellant. Paragraph 18 of the will does not apply to the surplus income. (*Kerr* v. *Dougherty*, 79 N. Y. 348; *Pray* v. *Hegeman*, 92 N. Y. 513; *Lamb* v. *Lamb*, 131 N. Y. 232.) The trusts created in paragraph 8 are invalid. (Chaplin on Suspension of Alienation [2d ed.], 140, 160, 273; *Kalish* v. *Kalish*, 166 N. Y. 368; *Stoiber* v. *Stoiber*, 40 App. Div. 160; *Hagemeyer* v. *Saulpaugh*, 97 App. Div. 535; *Union Trust Co.* v. *Soher*, 178 N. Y. 449.)

*George H. Tuttle* and *Daniel J. Mooney* for Nils K. Florman, respondent and appellant. The intent of the testator contemplated the immediate erection of the trust shares; the payment of an annual income of about $25,000 to each of his four life beneficiaries, and of the balance of the trust shares to the second generation; and the investment of the shares in the business and, when it was sold, in trust investments. (*Vanderpoel* v. *Loew*, 112 N. Y. 167; *Leach* v. *Godwin*, 198 N. Y. 35; *Cummings* v. *Cummings*, 146 Mass. 501, 508; *Rowe* v. *Lansing*, 53 Hun, 210; *Pierrepont* v. *Edwards*, 25 N. Y. 128; *Hammond* v. *Hammond*, 169 Mass. 82.) The testator intended that the surplus income, if any, on the share of his daughter Olga should go to such of her issue as survived her. (*Cummings* v. *Cummings*, 146 Mass. 501; *Hammond* v. *Hammond*, 169 Mass. 82; *Rowe* v. *Lansing*, 53 Hun, 210; *Pierrepont* v. *Edwards*, 25 N. Y. 128; *Craig* v. *Craig*, 3 Barb. Ch. 76.) So far as concerns the surplus income from the share of Olga V. Florman, her son is entitled thereto under section 63 of the Real Property Law, which is made applicable to personal property by section 11 of the Personal Property Law. (*St. John* v. *Andrews Inst.*, 191 N. Y. 254; *Matter of Ossman* v. *Von Roemer*, 221 N. Y. 381.) Paragraph 18 contains nothing which draws to it the surplus income on the share of Olga and her issue. (*Matter of Devlin*,

31 App. Div. 146; 167 N. Y. 573; *Gilman* v. *Healy,* 1 Dem. 404; *Schettler* v. *Smith,* 41 N. Y. 328; *Barbour* v. *De Forest,* 95 N. Y. 13; *Hafner* v. *Hafner,* 34 Misc. Rep. 65; 62 App. Div. 316; 171 N. Y. 633; *Potter* v. *McAlpine,* 3 Dem. 108; *Robison* v. *Robison,* 5 Lans. 165; *Young* v. *Barker,* 141 App. Div. 801.) Section 63 of the Real Property Law is equally applicable to the surplus income on Olga's share, whether such surplus income be regarded as wholly undisposed of or as the subject of an unlawful direction for accumulation. (*Matter of Ossman* v. *Von Roemer,* 221 N. Y. 381; *Matter of Harteau,* 204 N. Y. 292; *Manice* v. *Manice,* 43 N. Y. 303.) Since as a matter of investment the trust shares were duly retained by the trustees *in solido* in the business, and since they comprised in their aggregate the whole corpus of the business, the fact of their investment in this form rather than in segregated securities cannot affect the rights of the interested parties or change the legal devolution of the principal or the income from the respective shares. (*Vanderpoel* v. *Loew,* 112 N. Y. 167; *Leach* v. *Godwin,* 198 N. Y. 35; *Schermerhorn* v. *Cotting,* 131 N. Y. 48; *Cheever* v. *Cheever,* 172 App. Div. 353; *Mount* v. *Mount,* 108 Misc. Rep. 156; *Thorn* v. *De Breteuil,* 82 App. Div. 405; 179 N. Y. 64.) The term " business " was used by the testator in the broad sense of his entire piano enterprise and included the business which he managed and controlled through the medium of various corporations; and the findings of fact to this effect in the courts below, and the determinations to the same effect in the prior decrees, are conclusive. (*Matter of Quinn's Estate,* 5 N. Y. Supp. 261, 263; *Matter of Phipps,* 214 N. Y. 378; *Ely* v. *Megie,* 219 N. Y. 112; *Clark* v. *Goodrich,* 51 Misc. Rep. 140; *Atlantic P. T. C. Co.* v. *Mayor, etc.,* 133 Ga. 66.)

*James A. O'Gorman* for trustees, respondents and appellants. The trust funds provided for by paragraph

8 have been set up by the trustees in conformity with the testator's paramount purpose, and the estates thereby created cannot be cut down or impaired by any of the succeeding paragraphs of the will. (*Banzer* v. *Banzer*, 156 N. Y. 429; Thomas on Estates, 115, 1665.) For the purposes of this accounting, the several trust funds actually set up on March 16, 1916, must be deemed to have been set apart as of the date of the testator's death. (*Munson* v. *N. Y. S. & T. Co.*, 140 N. Y. 498; *Matter of Stanfield*, 135 N. Y. 292.) The surplus income should be distributed among the three children without regard to section 63 of the Real Property Law [made applicable to personalty by section 11 of the Personal Property Law]. (*Phelps* v. *Pond*, 23 N. Y. 83; *U. S. Trust Co.* v. *Soher*, 178 N. Y. 447; *Matter of Mount*, 185 N. Y. 167; *Matter of Hoyt*, 116 App. Div. 219; *Riker* v. *Cornwall*, 113 N. Y. 115; *Matter of Minor*, 146 N. Y. 129; *Carter* v. *Bd. of Education*, 144 N. Y. 624; *Matter of Allen*, 151 N. Y. 248; *Hobson* v. *Hale*, 95 N. Y. 609; *Haynes* v. *Sherman*, 117 N. Y. 433; *Stoiber* v. *Stoiber*, 40 App. Div. 156; *Hagemeyer* v. *Saulpaugh*, 97 App. Div. 535; *Allan* v. *Allan*, 63 Hun, 635; 149 N. Y. 282; *Garvey* v. *McDevitt*, 72 N. Y. 556.) The power to establish the trust funds was conferred by the testator upon his trustees, and their judgment should not be interfered with in the absence of clear proof that they have abused their discretion. (Redf. Surr. § 520; *New York Life Ins. Co.* v. *Sands*, 24 Misc. Rep. 106; *Matter of Reid,* 170 App. Div. 632.)

CHASE, J. Charles Kohler died June 4, 1913, having made his last will and testament July 15, 1912, less than a year prior to his death. He left him surviving Veronica M. Kohler, his widow, and three daughters, Olga B., Vera N., and Rita M., then aged, respectively, about nineteen, twelve and ten years. He was engaged in the manufacture of pianos and parts and appliances

of and for pianos. He left a large estate. He conducted a manufacturing business in which he was solely and individually interested. He was also the owner of a controlling amount of the stock of each of seven corporations engaged in similar or allied business with that conducted by him individually. The plant where he conducted his individual business and the plants of the several corporations were located in the same general part of the city of New York. The corporations were conducted severally through a board of directors as provided by law, who were elected by and reported to the stockholders of the corporations. There was also a committee or board of governors composed of the representatives of the several corporations, that acted and advised in the interest of the several corporations. Kohler by his will gave legacies to several of his relatives, employees in his business, and in the business of the corporations in which he was largely interested as stated, and also to certain charities, which aggregated $78,000. He also gave, bequeathed and devised to his wife certain real and personal property. He made his wife testamentary guardian of his daughters, and named her, his legal adviser, and one of his business associates, the executors of and trustees under his last will and testament. The parts of his will material on this appeal are paragraphs eight, eleven, twelve, thirteen, fourteen, fifteen and eighteen thereof, as follows:

" *Eighth.* All the rest, residue and remainder of my estate, both real and personal, and of whatever description, and wheresoever situated, I give, devise and bequeath unto my trustees hereinafter named, in trust as follows:

" *First.* To set aside out of my said residuary estate a share or portion thereof sufficient for the purpose, and to hold the same in trust for my daughter, Olga V., investing and reinvesting the same from time to time and paying over the sum of twenty-five thousand dollars ($25,000) per annum, payable semi-annually during her

natural life, and in addition thereto when she arrive
at the age of twenty-five (25) to pay over to her the
sum of One hundred thousand dollars ($100,000); when
she arrive at the age of thirty-five (35) a further sum
of One hundred thousand dollars ($100,000); and when
she arrive at the age of forty-five (45) a further sum of
One hundred thousand dollars ($100,000), and upon her
death, to pay over the balance remaining unpaid of the
share or portion of my said residuary estate so set aside
for her benefit as aforesaid, to such of her issue as shall
be living at her death, share and share alike.  Should
any of her issue die before her, leaving issue at her death,
then such issue shall take in equal shares the share the
parent would have received had he or she survived her
death.  Should my said daughter, Olga, die leaving no
issue surviving her, then, in that event, the said share
or portion herein provided for her shall pass into and
become part of my residuary estate.  *   *   * "

There follows in said eighth paragraph of the will
a second and third subdivision exactly the same in every
respect as the first subdivision except that the second
provides for a trust for his daughter Vera M., and the
third for his daughter Rita M. instead of for his daughter
Olga V., as in the first subdivision of the paragraph.

" Fourth.  To set aside out of my said residuary estate,
a share or portion thereof sufficient for the purpose, and
to hold the same in trust for my wife, Veronica M.
Kohler, investing and reinvesting the same from time to
time and paying over the sum of Twenty-five thousand
dollars ($25,000) per annum payable semi-annually during
her natural life.  *   *   *

" Eleventh.  I hereby give my said Trustees hereinafter
named, their survivors and successors in trust, as full power
and authority over my said personal and real estate as
I myself now possess, to sell the same for cash or on
mortgage at public or private sale; to mortgage, lease,
hold and manage the said realty until in their discretion

1921.]                Opinion, per CHASE, J.        [231 N. Y. 353]

a sale thereof is made, and meanwhile to receive and collect the rents, issues, and profits thereof, and to care for, repair, insure, and in case of destruction by fire or otherwise, to rebuild, remodel, or repair any building on said real estate in their care, and to receive, collect, invest and reinvest the said personal property, and to receive and collect the interests and profits as fully and freely as I myself might do in my lifetime, and to pay the same over as hereinbefore directed.

" *Twelfth.* I hereby authorize and empower my trustees hereinafter named at their discretion to retain the investments of my property in the form in which they may be at my death, and I also hereby authorize and empower my trustees to continue any business now owned and carried on by me in the City of New York or elsewhere during such period of time as in their discretion they consider it to be of benefit to my estate. Should the continuing of said investment or the continuing of my said business by my said trustees as aforesaid prove to be unprofitable to my estate, I hereby direct that upon no account shall they be held liable for any loss or damage my estate may sustain by reason of such continuance.

" *Thirteenth.* In the continuing of my business as herein directed, if the shares or portions set aside for my daughters as hereinbefore directed are already invested in such business, then it is my desire that they so remain until the business is sold by my trustees and I so direct.

" *Fourteenth.* And I hereby direct that while such business is being carried on by my trustees as aforesaid, and while the shares or portions set aside for my daughters remain in said business as aforesaid, the sum of twenty-five thousand dollars ($25,000) in half yearly payments shall be yearly paid to each of my daughters out of said business, the sum of twenty-five thousand dollars ($25,000) in half yearly payments shall be yearly paid to my wife also out of said business. The said yearly payments of

[231 N. Y. 353]      Opinion, per Chase, J.      [May,

Twenty-five thousand dollars ($25,000) to each of my daughters as aforesaid and Twenty-five thousand dollars ($25,000) to my wife are to be made in lieu of profits and interest and irrespective of what the profits of the business are, that is to say, in the event of the profits of the business in any year being in excess of the aggregate of said yearly payments to my wife and daughters, such payments shall not be increased; and on the other hand, should the profits of the business be less than the aggregate of said yearly payments to my wife and daughters, such payments shall not be decreased, they shall be maintained, and I so direct, and in the event of there being a deficit, that is to say, if the profits of the business do not equal the aggregate of the payments to be made to my wife and daughters as aforesaid, then, in that event, such deficit shall be made good out of the residue of my estate, which for the time being is invested in such business.

"*Fifteenth.* When in the judgment and discretion of my trustees, they think it advisable that the said business should be sold, then, in that event, I hereby restrict the investment of the proceeds received from the sale of said business or from the sale or conversion of any of my property, real or personal, to investments in which by law trustees may invest. Thereafterwards the income paid half-yearly to my wife and daughters as aforesaid, shall, of course, be limited to the net income arising from such investments, and the said yearly payments of Twenty-five thousand dollars ($25,000) to my wife and daughters respectively as aforesaid shall thereupon cease. * * *

"*Eighteenth.* Should there be any balance or residuary estate remaining after the bequests hereinbefore provided for, including the trusts also hereinabove created, then I give, devise and bequeath the same to my said children to be divided between them share and share alike."

Letters testamentary were duly issued to the executors

named in the will and they entered upon their duties as such. No appraisal and inventory of the personal property of the testator have been made and filed as provided by section 2668 of the Code of Civil Procedure, although the market value thereof was determined in a proceeding under article 10 of the Tax Law (Cons. Laws, ch. 60), relating to taxable transfers.

The will does not recognize with any accuracy the distinction that exists between the duties and authority of an executor and a trustee. The authority which it purports to give the trustees in paragraph eleven is substantially to perform executorial duties. The authority to retain investments and to conduct business was undoubtedly intended to apply to the executors as such as well as the trustees as such. The language of the will relating to the testator's personal representatives should, therefore, be considered with reference to the duties to be performed and not as if used by the testator in its technical meaning. (*Matter of Leonard,* 218 N. Y. 513, 520; *Jewett* v. *Schmidt,* 83 App. Div. 276; *Mee* v. *Gordon,* 187 N. Y. 400.)

The duties of executors, as the personal representatives named by a deceased in his will and appointed as such by the court, are primarily and generally to settle and distribute the estate of the decedent. In the settlement of the estate their duties require them to collect the securities, sell the property and convert the assets of the estate into cash, and then pay therefrom the debts, funeral and testamentary expenses, and distribute the net residue in accordance with the provisions of the will.

The executors in this case asserted, and there is now claimed for them under the will, power to exercise very unusual authority in administering the property of a decedent. Under the authority given to them, which is not now disputed, they conducted for a short time the business which Kohler was conducting as an individual manufacturer at the time of his death. They then sold it.

[231 N. Y. 353]      Opinion, per CHASE, J.      [May,

The first question about which there is serious contention on this appeal is as to the intention of the testator in giving his legal representatives as executors or trustees authority to continue the business in which he was engaged at the time of his death. So far as appears from this record the only business in which the testator was engaged (not including his duties as an officer or director in the several corporations in which he was interested), other than some incidental matters not now material, was the piano manufacturing business conducted by him individually, but in the name of Kohler & Campbell.

Owners of a controlling interest in the stock of a corporation may, through the votes to which they are entitled thereon, select the members of the board of directors or a majority of them, and such board of directors control the corporation. (General Corporation Law [Cons. Laws, ch. 23], sec. 34.) Corporations are artificial entities and the business of the corporation is carried on by it and not by the individual stockholders as such.

Kohler in his will recognized the distinction that exists between his individual business and the business in which he was interested as a stockholder or director. He by his will gives to " employees of the concerns in which I am (he was), interested." He says in his will that the gifts mentioned are to lapse in case " the legatee shall not be in *my* (his) *employ* or *in the employment of one of the concerns in which I am* (he was) *financially interested* at the time of my (his) decease."

He gives legacies of $500 to each of certain other " employees of the businesses carried on under the name of Kohler & Campbell and the Autopiano Company." The Kohler & Campbell Company is the name under which he conducted his individual manufacturing business and the Autopiano Company was one of the several corporations mentioned. When Kohler in the twelfth paragraph of the will quoted says: " I also hereby

authorize and empower my trustees to continue any business now owned and carried on by me in the City of New York or elsewhere during such period of time as in their discretion they consider it to be of benefit to my estate," he refers to his individual business and intended to distinguish between the business so carried on by him individually and his interest in incorporated business by reason of his holding stock in the corporations conducting the same.

The individual influence and ultimate control by a majority stockholder does not in itself constitute in any proper sense a business owned and carried on by such stockholder. At no time could the executors or trustees have taken the management of the corporations or either of them out of the control of the directors (*Manson* v. *Curtis*, 223 N. Y. 313), nor could the profits or income of the corporations have been divided except by dividends to be declared on the stock by the directors of the corporations severally. Since a short time after Kohler's death, all manufacturing business in which he was interested has been owned and conducted by corporations. The profits or income therefrom have come to the executors and trustees as dividends on stock and not otherwise. There is no dispute about the facts as shown by the record. The finding of the Appellate Division that " The business of the testator referred to in his last will and testament was the management and control of the seven corporations and the affairs of Kohler & Campbell " is without any evidence in the record to sustain it.

The testator authorized and empowered his trustees to " retain the investments of my (his) property in the form in which they may be at my (his) death." The authority to retain the investments was given in immediate connection with the authority given to the trustees to continue " any business now owned by me (him) and carried on in the city of New York." The distinction

between an investment and the continuing of a business is thus recognized in the will.

We hold that the authority of the executors and trustees to conduct the business carried on by Kohler in the city of New York was confined to his individual business as distinguished from an undefined influence and control in the conduct of corporations in which he had stock investments at the time of his death.

The duties of the executors and trustees include giving such care as practical and appropriate to the several investments held by them. In so doing they may aid the corporations, in the stock of which the estate has large investments, to continue the unity of interest in the conduct of their allied business that existed in the lifetime of the testator. Such care and aid would not, however, be carrying on business owned by Kohler in the city of New York at the time of his death. The individual business of Kohler was sold by his executors at some time prior to December, 1914. The sale was made to a corporation for $800,000, and the executors took from the corporation 8,000 shares of its stock of $100 each in payment of said business and transferred the business to the corporation. Thereafter the executors sold 1,050 shares of stock so received by them on the sale of the individual business and received therefor $150 per share. Since that time, as appears by the petition by which this proceeding was started, the executors and trustees have " under and by virtue of the terms and conditions of the said will * * * retained the investments of the testator in the form in which they were at the time of his death, and have been receiving the profits and income therefrom, and have paid to the widow and children of the testator the annual items as directed by said will."

The statement of the executors and trustees in their petition should be considered in connection with the conceded fact that they have 6,950 shares of the stock of

Kohler & Campbell, Incorporated, which they have continued to hold and which form a part of the aggregate investment which they have retained and from which they have been receiving the profits and income as stated in the petition. The income has exceeded the amounts paid out by the executors and trustees by a very large sum.

We repeat, in substance, that there is nothing in the will to justify the conclusion that the testator intended that his executors or trustees should interfere with the officers and directors of the several corporations in which the testator had stock, or that it was the purpose and intention of the testator to authorize or direct the executors to enter upon the conduct of any business other than the one at the time of his death owned and conducted by him individually in the city of New York.

After the sale of the business conducted by the testator in the name of Kohler & Campbell, at the time of his death as hereinbefore stated, the executors and trustees as such filed a petition for an accounting. By the decree entered thereon March 16, 1915, the accounts were settled and approved to December 1, 1914, and it appears from the decree that there then remained in the hands of the executors the sum of $4,300,312.72, in which were included gross income and profits from the estate amounting to $581,224.01. The amount so remaining in their hands included $420,080.32 in cash and the balance was personal property, consisting of stocks, bonds and mortgages, leases and notes unsold and uncollected that were specifically enumerated, the majority of which remained in the name of Charles Kohler, the same as at the time of his death. The decree directed that the executors pay commissions amounting to $150,232.20, and " pay the balance of said cash and assign, transfer and deliver all the securities, personal property or other property in their hands as such executors, as shown by

24

the schedules annexed to the account herein, to Veronica M. Kohler, William B. Ellison, and Richard W. Lawrence as trustees."

The decree further provided that the executors " Be and they hereby are discharged from all liability or accountability as to all matters embraced in said account." The decree did not in any way direct in regard to the trusts to be formed as provided by the eighth paragraph of the will, and it does noʋ appear from the record that the executors took any steps whatever toward the formation of said trusts, nor did they in fact transfer the securities mentioned in the decree to themselves as trustees.

On the 17th day of December, 1915, the executors and trustees, as trustees, joined in a petition to the Surrogate's Court asking for a judicial settlement of their account. It resulted in a decree entered January 27, 1916, which gave a summary statement of the account showing a balance of principal in their hands of $4,167,-685.71, and a balance of income from December 1, 1914, to December 1, 1915, of $628,094.47, and the decree provided, after the payment of certain specified items, that the trustees, as such, be " discharged from all liability or accountability as to all matters embraced in such account verified December 17, 1915, except as to the principal and unexpended income in the hands of said trustees as shown by the account." The decree settles the account to and as of December 1, 1915.

On the 16th of March, 1916, the trustees caused to be entered upon their books four items, as follows:

| | |
|---|---:|
| Veronica M. Kohler | $881,821 24 |
| Olga B. Florman | 1,182,028 89 |
| Vera M. Kohler | 1,182,028 89 |
| Rita M. Kohler | 1,182,028 89 |
| | $4,427,907 91 |

In making these entries there was included $300,000 more in the item for each daughter than for the widow because of the provision in the will for the payment to them, respectively, of $100,000 as they each arrive at the age of twenty-five, thirty-five and forty-five years. The total amount of the entries is the gross amount of the assets of the estate, as shown by the decree of March 16, 1915, *prior to the payment therefrom of the commissions as stated above*, together with an estimate of the value of a certain unproductive piece of real property as of $110,000, and an item of increase of the principal as of sometime after the accounting of March 16, 1915, of $17,605.19. That the entries were merely careless bookkeeping memoranda and not a setting aside of the trusts, as provided by the eighth paragraph of the will, in severalty or otherwise, is apparent without further statement or comment.

Subsequent to the bookkeeping entries as stated, proceedings were commenced, first, for a construction of the will, and then for an accounting by the executors and trustees as such, and the same were consolidated as hereinbefore stated. There was first a hearing before the surrogate in New York county on the petition for the construction of the will, and an opinion was written in connection therewith by Surrogate FOWLER. (*Matter of Kohler*, 96 Misc. Rep. 433.) A petition for an accounting was filed in accordance with the suggestion of Surrogate FOWLER, and the consolidated proceeding was referred to a referee. Upon the report of the referee a decree was entered in the Surrogate's Court, from which an appeal was taken to the Appellate Division, where the decree of the Surrogate's Court was modified and affirmed. (*Matter of Kohler*, 193 App. Div. 8.)

It would extend this opinion to too great length to state in detail the different decrees, orders and opinions that have been entered and filed in this proceeding.

It is expressly provided by subdivision twelve of the

will that the executors in their discretion may " retain the investments of my (his) property in the form which they may be at my (his) death." They have been so retained except that the individual business has been sold and stock has been taken in the corporation purchasing the same which has been held until this time. Since the sale of the individual business and the accounting as of December 1, 1915, the paragraphs of the will numbered eleven to fifteen inclusive, except as therein the trustees are empowered to retain the investments in the form in which they were at the time of the testator's death, are immaterial and are of no importance in connection with any question relating to the conduct of the executors and trustees subsequent to the entry of the decree of March 16, 1915.

There is no direction in the will for an illegal suspension of the power of alienation, and nothing therein that directs an accumulation of interest, or that expressly contravenes the statutes relating to real or personal property.

The gift to the trustees, under the eighth paragraph of the will, of the rest, residue and remainder of the estate, was of the gross remainder as distinguished from the net remainder mentioned in the eighteenth paragraph of the will. The gift was as expressly stated for the purpose of setting aside out of such gross residuary, shares or portions thereof, *sufficient for the purpose,* to hold in trust for the daughters and widow respectively, and they are directed to divide the net residue among the children of the testator, share and share alike. The duty to set aside the shares in trust for the daughters and widow devolved upon them immediately upon the determination of the gross residue. It was an executorial duty. It was not performed on March 16, 1915, and we hold that it never has been performed. The trustees admit that the trusts were not formed by the decree of March 16, 1915, or by any act of theirs following the same prior to March 16, 1916, by the meaningless bookkeeping entries

1921.]                Opinion, per CHASE, J.        [231 N. Y. 353]

made by them on that day. . The trustees have continued to hold the same as the gross residuary of the estate. It all passed under the eighteenth paragraph of the will to the children of the deceased subject to the formation of the trusts. ·

The·duty of forming the trusts should now be performed as of March 16, 1915, and the income on the entire trust estate to March 16, 1915, should be ascertained and added thereto and treated as a part thereof. No value has been placed upon the stocks and property except as stated in the transfer tax proceeding in 1914. No proof is presented to show the value thereof at any particular time since 1914 except as the dividends thereon indicate the earning power of the corporations. After a sale or careful valuation of the stocks, if they are to be retained by the trustees, or in any case, it may be practically impossible to set aside an amount for each of the trusts so as to produce an income to meet exactly the payments directed to be made from the several trusts. It may be assumed that the trustees in forming the trusts will make reasonably sure that the amount set aside for the trusts will be sufficient under all reasonable circumstances to provide a net income sufficient to make the payments to the widow and the three daughters respectively. After setting aside a sufficient part of the gross residuary as of March 16, 1915, for the purposes of the trusts the balance that remains in the hands of the executors and trustees, including interest to that date as stated, should be divided among the children, as provided by the eighteenth paragraph of the will.

I am of the opinion that the income on the gross residue of the estate received by the executors and trustees from March 16, 1915, down to the time when the trusts are actually set aside, in accordance with the direction of this court, should be divided between the trustees of the several trusts and the net residuary estate remaining after the trusts have been set aside, in accordance with

the amount of said trusts respectively and said net residuary estate. It may be unnecessary to consider on this appeal what should be done with the principal of the trust funds or any surplus of income, if any, on such trust funds subsequent to their formation respectively as of March 16, 1915. That question, however, will doubtless become an important one in the conduct of the trusts, and as it has been discussed at length on this appeal we will express our views in regard to the same herein.

The trust provided by the fourth subdivision of the eighth paragraph of the will terminates with the death of testator's widow, and there is no gift of the remainder interest in the principal of that trust fund. The principal of that trust fund belongs to the residuary legatees subject to the trust. Any surplus of income, if any, thereon belongs to and should be divided among the residuary legatees.

The testator has clearly directed that there shall be set aside for his daughters respectively an amount sufficient for the purpose of producing $25,000 per annum payable to them semi-annually during their lives respectively, and also in addition thereto $100,000 to be paid to them as they respectively arrive at the age of twenty-five years, and again when they arrive at the age of thirty-five years, and again when they arrive at the age of forty-five years.

The $300,000 to be paid to each of the children at the times as stated cannot be accumulated by setting aside an amount which would under an agreed rate of interest produce the amounts for the payments as stated. A trust which provides for the accumulation of income to pay annuities is invalid as for any other purpose not specifically permitted by statute. When such amounts are set aside it will be the duty of the trustees to invest such several sums as other trust funds are invested. There is no provision in the will for the payment of any interest that may be received on these several amounts.

Section 63 of the Real Property Law (Cons. Laws,

ch. 50), made applicable to personal property by section 11 of the Personal Property Law (Cons. Laws, ch. 41), provides as follows: " When, in consequence of a valid limitation of an expectant estate, there is a suspension of the power of alienation, or of the ownership, during the continuance of which the rents and profits are undisposed of, and no valid direction for their accumulation is given, such rents and profits shall belong to the persons presumptively entitled to the next eventual estate."

As it is not provided that these trusts be formed from real property, we see no reason why the direction to hold the several amounts for the payments to the daughters when they arrive respectively at twenty-five, thirty-five and forty-five years of age are not valid limitations of an expectant estate, and as the income is undisposed of and no valid direction for the accumulation of the income is given, such income should be paid to the persons presumptively entitled to the next eventual estate, and such persons are the daughters respectively.

The income, therefore, on that part of the trust funds held to pay the amounts directed to be paid to the daughters as they arrive at the age of twenty-five, thirty-five and forty-five years respectively, should be paid to them from the date as of which the trusts are formed.

The surplus of income, if any, on that part of the trust funds other than the part held for the payment of the amounts to the daughters when they arrive respectively at twenty-five, thirty-five and forty-five years of age, should in my judgment be paid to the persons presumptively entitled to the next eventual estate in such part of the trust funds. The gift of the net residue of the testator's estate to his children, as provided by the eighteenth paragraph of the will, is confined, by the clear language by which it is described, to be " *any balance or residuary estate remaining after the bequests hereinbefore provided for, including the trusts also herein created.*" It does not in my judgment include any

surplus of income accruing on the trust estates after the trusts have been separated from the gross residue and have become new and independent funds.

It cannot, it seems to me, be said that the testator intended that the amounts set aside out of the gross residuary estate, as the shares or portions thereof sufficient for the purpose of producing the income to be paid to the daughters, as provided by the eighth paragraph of the will, should remain uncertain, varying or shifting amounts. Sufficient amounts should be set aside for the purposes, as provided by the eighth paragraph of the will, and the amounts, *so set aside*, are *by the testator* given upon the death of his daughters respectively, *to their issue respectively*, share and share alike. It is only when an amount so set aside is, through fraud, inequity or mistake, found to be too small or too large that it can be changed, and then only through an application to the court to have the decree, pursuant to which the amount was originally fixed and determined, changed after due hearing of all persons interested. (*Matter of Willets*, 112 N. Y. 289, 297; *Griffen* v. *Keese*, 187 N. Y. 454.) The principal of such trust funds when set aside, will, subject to the trusts, become vested in those to whom the residue thereof is given *under the will*. Unless the excess of principal, if any, set aside in the several trusts as provided by the eighth paragraph of the will, remains the property of the residuary legatees under the eighteenth paragraph of the will, I see no basis for holding that any excess of income on such trust funds should be payable to such residuary legatees.

The persons presumptively entitled to the next eventual estate are those who are entitled to the estate which is to take effect at the end of the period during which the rents and profits are undisposed of, or are invalidly accumulated. (*Matter of Harteau*, 204 N. Y. 292; *St. John* v. *Andrews Institute for Girls*, 191 N. Y. 254; *Matter of Ossman* v. *Von Roemer*, 221 N. Y. 381.)

In *United States Trust Co. of N. Y.* v. *Soher* (178 N. Y. 442) it was held that the statutes mentioned did not apply to the provisions of the will then under consideration because the court was unable to ascertain who were the persons presumptively entitled to the next eventual estate, and the surplus was for that reason distributed between the sons of the testator as in case of intestacy. The decision in the *Trust Company* case is not applicable to the facts now before us.

The persons presumptively entitled to the next eventual estate, so far as the trust funds for the purpose of providing the $25,000 a year to each of the children is concerned, are the persons entitled to such trust funds upon the death of the daughters respectively.

A majority of my associates, however, are of the opinion that, inasmuch as the trustees are only entitled strictly to set aside a trust fund sufficient to produce an annual income of $25,000 in the case of each beneficiary named, any income which may have accumulated between March 16, 1915, and the date when the trusts are actually set aside, or which may be produced after the trusts are set aside in excess of what has been required or may be required to make said annual payment of income provided by the will, should be treated as part of the net residuary estate and be paid over under clause eighteen thereof.

The order of the Appellate Division and the decree of the surrogate should be reversed and the proceeding remitted to the Surrogate's Court for further action, in accordance with this opinion, with costs to appellant daughters, Olga B., Vera N. and Rita M., payable out of the estate.

HISCOCK, Ch. J., HOGAN, POUND, MCLAUGHLIN, CRANE and ANDREWS, JJ., concur.

Ordered accordingly.