In the Matter of the Judicial Settlement of the Account of Pro-
ceedings of JOHN A. STEWART and Others, as Executors of the
Last Will and Testament of JOHN B. TREVOR, Deceased.

In the Matter of the Judicial Settlement of the Account of Pro-
ceedings of JOHN A. STEWART and Others, as Trustees under
the Last Will and Testament of JOHN B. TREVOR, Deceased.

(Glenview Maintenance Fund.)

Surrogate's Court, Westchester County, September, 1922.

Wills — construction — direction to trustees to maintain family home
out of general estate — distribution of part of estate — what constitutes
" general estate " from which upkeep of home is to be paid.

The words " general estate " clearly comprehend all the property passing under
the will of a decedent after payment of debts, funeral expenses and administra-
tion charges.

Testator, whose estate at the time of his death was over $10,000,000, devised his
residential property known as " Glenview," together with the land connected
therewith and all improvements thereon, to his executors in trust to maintain
the same as a homestead and permanent residence for his wife and children dur-
ing her life and that of the youngest child living at testator's decease, but the
will failed to provide for the setting up of a trust fund.   The executors were
given power to " pay out of my general estate " all sums necessary in their judg-
ment to keep the property insured and in good repair and good order, also all taxes
and assessments thereon, with direction that " no part of any said sums shall be
charged against the income of my wife or against the principal of the share of
any child."   After thirty-four years it was found that the Surrogate's Court and
the trustees were in error when they set up a fund so small as $124,000 to pay
for the upkeep of Glenview, which fund, severed from the general estate, is
insufficient to meet the clear intention of the testator.   The direct question as
to what is now the general estate out of which the excess cost of the upkeep of
Glenview should be paid, arising for the first time in the present proceeding for
the settlement of the accounts of the executors and trustees, at which time it
appeared that two-thirds of testator's residuary estate, the gift of which was
made subject to the provisions relating to the gift of Glenview and its mainte-
nance, had been distributed to testator's four children as they arrived at certain
specified ages, *held*, that in accordance with the reasonably clear intent of the
testator that such upkeep should be a charge against and paid from the general
estate, the money paid out for that purpose over and above the income of the
fund should upon the death of the life tenant be paid from the $124,000 fund
and from the moneys now in the hands of the executors.

The balance should be paid out of the proceeds of the sale of Glenview, thus con-
stituting the trust fund to maintain said property; the estate in the hands of
the executors unappropriated to any trust and the Glenview real property are
the present " general estate " of the testator available for the purpose of paying
the excess cost of maintenance of Glenview.

The question as to what was the testator's " general estate " at the dates of the
decrees entered upon prior accountings being neither involved nor litigated,
said decrees were conclusive only as to what was decided and were binding upon

Surrogate's Court, Westchester County, September, 1922.          [Vol. 119

all parties in the proceeding as to the setting up of the trust fund to maintain Glenview and as to the decree that the excess cost of maintenance should be a charge upon the general estate and an equitable lien against the Glenview real estate.

PROCEEDINGS to settle executors' and trustees' accounts.

*Butler, Wyckoff & Reid* (*J. Edwards Wyckoff* and *John F. Devlin*, of counsel), for executors and trustees.

*Cadwalader, Wickersham & Taft* (*Sylvanus D. Ward*, of counsel), for Emily N. Trevor.

*C. C. Daniels*, for Henry G. Trevor and others.

*Jerome A. Peck, Oscar Le Roy Warren* and *Daniel Ticknor*, special guardians.

SLATER, S.   John B. Trevor executed his last will and testament March 5, 1890, and died December 21, 1890.   The will was admitted to probate January 9, 1891.   He resided in the city of Yonkers, and was a person of large fortune.   The will first directs the payment of debts, funeral and testamentary expenses, and the same are made a charge upon " *my personal estate generally* in the hands of my executors."

The dwelling house at Yonkers and the land connected therewith and all improvements thereon, known as Glenview, is given to the executors, in trust, to maintain as a homestead and permanent residence for the wife and children during the life of the wife and youngest child living at testator's decease.   The will further says: " I hereby empower my said executors to *pay out of my general estate* all sums necessary, in their judgment, for keeping said dwelling house, lands, buildings, and premises insured and in repair and in good order, and also all sums required for the taxes and assessments thereon, and no part of any said sums shall be charged against the *income* of my wife, or against the *principal* of the share of any child."   By the 3d paragraph the executors are to permit the wife to use and enjoy all articles of personal property " as they have been and now are used and enjoyed by me and my family."   The executors are empowered in their discretion to sell all or any part of the land which is the subject of the devise hereinbefore made, either in parcels, or as a whole, whenever in the judgment of the executors it shall appear to be for the interest of the estate, and of the wife and children to sell the same, and with like power and authority to sell any part of lands and premises, except that the dwelling house shall not be sold during the life of the wife without her consent.   (The wife is now deceased.)   On

the termination of said two lives, or of the life of the wife, the executors are directed to sell Glenview, and the proceeds of sale are disposed of according to the provisions hereinafter contained in respect to the residuary estate. The 3d paragraph of the will gives to the wife certain named personal property contained in the homestead and other articles for use or ornament of every description, which may be in or pertaining to said dwelling house. Upon the death of the wife, the executors are directed to sell said articles and the proceeds of sale shall become a part of the residuary estate.

Subject to the payment of debts and expenses and the provisions hereinbefore directed the rest, residue and remainder of the estate, real and personal, shall be held by the executors, in trust, to sell and convert into money. By the 5th paragraph of the will the executors are directed to set apart and invest out of the *personal estate* one-third part thereof for the benefit of the wife of the testator during her natural life, and upon her death, the principal sum with any addition from time to time, of the proceeds of real estate to the extent of one-third thereof is to be disposed of for the benefit of *her* children, Mary T. Trevor, Emily H. Trevor, John B. Trevor, Jr. By the 6th paragraph certain legacies are given, to be paid out of the *personal property* constituting a part of the remaining two-thirds of the residuary estate. By the 7th paragraph the balance of the *residuary estate*, after making provision for the benefit of his wife out of the personal estate, is directed to be held as follows: As fast as any of the real estate shall be sold, the net proceeds shall be personal property in the hands of the executors and one-third thereof shall be added to the one-third part of the personal estate directed to be set apart and invested for the benefit of the widow during her life, and the remaining two-thirds thereof shall be added in equal parts to the shares of the residuary estate to be set apart for the testator's four children, namely, Henry G. Trevor, a child by a deceased wife, and Mary T. Trevor, Emily H. Trevor and John B. Trevor, Jr., children of his surviving wife. The executors or trustees shall immediately after his death and after making the provisions hereinbefore directed to be made, divide the remainder of " my entire estate " into four equal parts to represent respectively his said four children and to hold said shares in trust, for their support, maintenance and education. The will then directs the payment of portions of said four shares to each child from time to time as they shall arrive at certain specified ages.

By the 8th paragraph a general power of sale is given to the executors. In regard to the power of sale given, the testator says: " I include the dwelling house and lands mentioned in the

Surrogate's Court, Westchester County, September, 1922.     [Vol. 119

Second article of this will, but I request that such power be not exercised unless my executors shall think that for any reason it is undesirable for my wife and family to reside there."

It will be observed that while the will provides for the maintenance and upkeep of the homestead property, it fails to provide for the setting up of a trust fund therefor. However, in an accounting proceeding of the executors by decree dated February 19, 1892, a trust fund of $124,983.55 was set up out of the general estate by direction of the surrogate " as a fund to provide an income to meet the expenses directed to be defrayed out of the general estate of the testator by the second article of his will, such securities, property and moneys to be held by said trustees for the purposes aforesaid and subject to a future accounting therefor." It also set up one-third of the personal estate — $3,189,917.50 — known as the Emily N. Trevor trust, and also the four trust funds of $1,586,958.52 each for the testator's four children created under the 7th article of the will. It was then settled for all time that the sums so set apart constituted the principal of certain trust funds according to the terms of the will. The said trust funds for the widow and children were no longer a part of the general estate. *Matter of Kohler*, 231 N. Y. 353, 376.

The trustees accounted in this court by decree dated March 27, 1893, and likewise accounted by decree dated April 13, 1895. Upon an intermediate accounting of the trustees, the decree of the Surrogate's Court of Westchester county dated May 29, 1902, surcharged the trustees with certain items expended by them over and above the yield of the Glenview maintenance fund. By reason of increased taxes and additional expenses, the trustees were unable to meet the expenses of keeping Glenview in repair and in good order out of the income of the fund, and upon the opinion of eminent counsel were advised that it was their duty to maintain the property out of the general estate in a condition similar to that in which they had found it. Upon appeal the Appellate Division considered the question as to how the executors are to provide the money necessary to restore the Glenview fund. That court held that the trust for the maintenance of the homestead is an active and valid trust; that the trustees had made only such expenditures as they were authorized by the will to make; that these expenses were to be paid out of the *general estate;* that the setting apart of the $124,983.55 fund by the decree of 1892 was a valid exercise of the power of the Surrogate's Court; that so long as that decree remains in force the trustees are bound to use only the income of those securities for maintaining Glenview; that the trustees must restore to that fund the sum of $18,000, and that

they may make such restoration out of *any property of the general estate* which remains in their hands. *Matter of Stewart*, 88 App. Div. 23. The executors again accounted and decree of July 15, 1902, settled said account.

In 1903 the trustees of the Glenview maintenance fund accounted in the Supreme Court, and in said proceeding judgment was entered January 16, 1904, judicially settling said account and directing that said excess expenditures were to be paid out of the general estate of the testator still in the hands of the executors, and that in case such general estate was not sufficient, the trustees were to be allowed credit for the legal interest for any deficiency and an equitable lien upon the Glenview property for the amount thereof. In 1916 the trustees again accounted in this court and on November 12, 1918, a decree was entered judicially settling said account, and giving to Emily N. Trevor an equitable lien upon the Glenview estate to be paid to her out of the proceeds of any sale of said premises for the amount of her personal advances to the trustees for the excess of expenditures for the maintenance of the homestead property. The executors and trustees have in this proceeding presented separate accounts down to April 4, 1922.

The present trustees' account shows that the trustees have in hand $103,820.29 for the Glenview maintenance fund. The trust upon the widow's death has ceased and the amount which is in the fund becomes a portion of the residuary estate which passes to all the children. The account of the executors shows that the executors have in hand $115,476.94 which has not been set apart to any trust; that since 1903 the trustees have expended for the general upkeep of Glenview the sum of approximately $300,000 beyond the income realized from the Glenview maintenance fund. The moneys for these expenditures have been obtained from the executors of the estate and from loans made to the trustees by Emily N. Trevor.

In this proceeding Henry G. Trevor, the son by the deceased wife, has interposed objections regarding this over-expenditure, and contends that this overpayment which has been created must be charged against the principal of the one-third part of the personal estate held in trust for the widow with remainder to her three children; that this fund is the only " general estate." The objector says that by process of elimination the principal of the trust fund in one-third of the personal estate created for the widow upon her death becomes " general estate " and is chargeable with any excess payment for the upkeep of Glenview. He also asks the court to construe the provisions of the will and determine what does constitute at this time the general estate of the testator from

and out of which are to be paid all sums necessary for keeping Glenview in good repair, and for the taxes and assessments thereon.

Upon the hearing it was in part stipulated by counsel as follows: " That the trustees of the trust fund known as Glenview Maintenance Fund have expended and paid out since February 19th, 1892, up to and including April 4th, 1922, the sum of $297,810.84 over and above the amount of income received from the trust fund for the upkeep of Glenview. The said sum having been made up by advances or loans from the executors of the estate of the decedent to said trustees in the sum of $102,500.00, and by advances or loans from Emily N. Trevor to said trustees in the sum of $195,310.84; that all papers and proceedings in any and all prior judicial actions and accountings of trustees are to be considered a part of the record in this proceeding."

Since the hearing and on July 30, 1922, the widow, Emily N. Trevor, has died.

In the construction of a will we seek the intent of the testator as exhibited by the words he has selected. *Matter of Bump*, 234 N. Y. 60. The testator was a man of very large means; his estate at the time of his death was over $10,000,000. The condition that brings the objector into court arises very largely by the change in world conditions, and by the longevity of the widow. The annual taxes against the property alone exceed $15,000 per annum. Undoubtedly, the fundamental intention of the testator was to provide so that his widow and family should live in the same condition as they had lived in testator's lifetime. Presiding Justice Goodrich of the Appellate Division, in *Matter of Stewart, supra*, in connection with the intention of the testator, said: " The testator could hardly have used stronger language to indicate that he intended that the conditions which had existed during his lifetime should continue to exist after his death, and that what he had been accustomed to do during his lifetime his executors should do after him, in the maintenance of the home which he had prepared for himself and for his family after his death. This man of many millions chose to spend large sums in gardens and lawns, hothouses and gardeners, to beautify his home and enable him and his family to enjoy its fruits; and there can be no question that he intended that his family after his death should continue in the same enjoyment in just the same manner as he and they had enjoyed it during his life, and that his executors should pay the necessary expense therefor out of his general estate."

The executors were directed to apply the charges for said general upkeep " *out of my general estate*," but this authority was with the limitation that no part of any said sum " shall be charged

against the *income* of my wife, or of any child, or against the *principal* of the share of any child." This creates uncertainty as to the testator's intention. Thus a query is raised. Out of what portion of his estate at this date shall the cost of the upkeep of Glenview be charged? And, whether or not the words of the general power and the limitation are not in direct conflict. What did he mean by his general estate? To hold that the latter part of the paragraph was intended to be a limitation upon the general power to pay out of the general estate would be to nullify and destroy the fundamental purpose the testator had in mind for the living of his widow and children after his decease. We must ascertain what he meant by the payment of the charge of the upkeep of Glenview out of the general estate. A person's *general estate* is what is left after the payment of debts, funeral and testamentary expenses. The word " general " pertains to a whole rather than a part. The word " estate " in its broad sense includes every species of property. *Lessler* v. *De Loynes*, 153 App. Div. 903. The words " general estate " clearly comprehend all the property passing under the will of the decedent after the payment of debts, funeral expenses and administration charges. After thirty-four years it has been found that the Surrogate's Court and the trustees were in error when they set up a fund so small as $124,000 to pay for the Glenview upkeep. The principal of the trust fund severed from the general estate is insufficient to meet the clear intention of the testator.

The gift in remainder of one-third of the personalty to the widow in trust, and two-thirds of the residue to the four children in trust, is made subject to the payment of debts and expenses, and the *provisions relating to the gift of Glenview and its maintenance by the terms of the 4th paragraph of the will*, wherein the rest, residue and remainder of the estate is given to the executors in trust to be divided as indicated therein. The difficulty is that the two-thirds of the residuary estate has been distributed to the four children as they have arrived at certain specified ages. It is only when an amount so set aside is through fraud, inequity or by mistake found to be too small, or too large, that it can be changed, and then only through an application to the court. *Matter of Kohler*, 231 N. Y. 353, 376. It was the duty of the trustees to set aside a sufficient sum to produce the cost of maintenance and provide against all reasonable contingencies. The surrogate has heretofore determined that $124,000 should be set aside for that purpose. That determination has never been appealed from, and cannot now be reviewed. *Matter of Willets*, 112 N. Y. 289. In *Griffen* v. *Keese*, 187 N. Y. 454, 466, the court said: " We entertain no doubt that if the fund, as established, had proven

too small to carry out the testator's directions, the executors could have drawn upon the residuary estate to make it large enough, for the residuary estate was to consist only of what remained after the testator's specific directions had been complied with." It would appear that the testator's specific direction in the instant case was not complied with, probably through mistake, or possibly bad judgment, and the personal residuary estate has since been lost to the executors by the setting up of the several trust funds created by the will. *Matter of Kohler,* 231 N. Y. 353, 376.

By a decree in a prior accounting made in this court November 12, 1918, the expenditures for the maintenance of Glenview over and above the income from the fund provided for its upkeep were created an equitable lien against that real property. The Glenview real estate is said to be worth about $750,000, and is situated in the city of Yonkers adjacent to the Hudson river, and contains the home, outbuildings, greenhouses, and all the appurtenances that go with a country estate of its class and character.

The prior decrees are conclusive as to what was decided and nothing more. They are binding upon all the parties in the proceeding as to the setting up of the trust fund to maintain Glenview and as to the decrees that the excess cost of maintenance should be a charge upon the general estate and an equitable lien against the Glenview real estate. *Griffen* v. *Keese, supra; Matter of Hood,* 90 N. Y. 512; *Matter of Tilden,* 98 id. 434.

The question as to what was the general estate at the dates of the several decrees was not involved, litigated nor decided. In the question at bar the courts are now for the first time confronted with the direct question as to what is now the general estate out of which the excess cost of the upkeep of Glenview shall be paid. The intention of the testator is reasonably clear to charge that the upkeep of Glenview shall be paid. The intention of the testator is reasonably clear to charge the upkeep of Glenview against the general estate.

It is my opinion that the money paid out for Glenview's upkeep over and above the income from the fund, upon the death of the life tenant shall be paid from the fund of $124,000, which was set up out of the general estate for this particular purpose, and from the moneys now in the hands of the executors, and that the balance shall be paid out of the proceeds of the sale of Glenview, thus constituting the trust fund to maintain Glenview; the estate in the hands of the executors unappropriated to any trust, and the Glenview real property, are the present " general estate " of the testator available for the purpose of paying the excess cost of maintenance of Glenview.

There is another proceeding pending in this court in the matter

of this will, wherein the petition was filed September 1, 1922, seeking to declare the several devises and bequests embraced in the 4th, 5th and 7th paragraphs of said will to be illegal and void beyond the life estate of Emily N. Trevor, decedent's widow, and that, with respect to said property, said testator died intestate. There has been no hearing upon the petition, and in formulating this opinion the court has not considered that proceeding. In the event of a final judgment in accordance in part, or in whole, with the prayer of the petitioner, the corpus of any invalid trust would become a portion of the general estate in the hands of the executors.

A power of sale is conferred upon the executors in their discretion to sell any part of Glenview, except that the dwelling house shall not be sold without the consent of the wife (now deceased), and under the 8th clause of the will a request is made that such power be not exercised unless the executors think that for any reason it is undesirable for the wife and family to reside there. The executors undoubtedly will give careful consideration to this power, because after thirty-four years it may be found that the time has arrived when it is undesirable for the family to longer reside there after the death of Emily N. Trevor. To unduly continue the large annual upkeep for the Glenview property, which must later be charged against the interests as herein indicated, might be so negligent and such an improper administration as to imperil the estate and amount to unfitness for the due execution of the office of executor. Discretion of executors is subject to the consideration of this court. Surrogate's Court Act, § 40, as amd. by Laws of 1921, chap. 439.

Let decree be entered according to this opinion.

Decreed accordingly.