In the Matter of the Estate of ZILPHA C. BACKUS, Deceased.

Surrogate's Court, Ontario County, September 23, 1940.

*Gaillard, Fisher, Allen & Bateson* [*William S. Allen* of counsel], for Clark Williams, petitioner.

*John Colmey,* for the Frederick Ferris Thompson Hospital, respondent.

CRIBB, S. This is a proceeding for the construction of the " Tenth " paragraph of the last will and testament of Zilpha C. Backus, who died June 6, 1915. Her will was admitted to probate and letters testamentary were issued to Clark Williams and Astor Trust Company on the 3d day of July, 1915.

On the 26th day of June, 1916, the executors filed in this court an account of their proceedings; citations, returnable July 17, 1916, were issued, and on the return day, all interested persons having been duly served, or waived issuance and service of citation, a decree was made and entered judicially allowing and settling the accounts of said executors and directing distribution of the assets of the estate then remaining. The account showed that on the 6th day of April, 1916, the executors had turned over to said Clark Williams, as trustee under paragraph " Tenth " of testatrix's will, securities of the then value of $102,856.25. The decree approved this transfer and further ordered that the executors pay to said trustee $805.67, that being the amount remaining to the residuary estate after the payment of all other sums as directed by the decree.

On the 25th day of May, 1939, the trustee, Clark Williams, voluntarily instituted a proceeding in this court for a judicial settlement of his accounts as trustee. This was in the nature of an intermediate accounting as the life beneficiary is still living. The latter and Frederick Ferris Thompson Hospital, remainderman, are the only parties having any interest in the trust fund. On the return day there was no appearance in behalf of the life beneficiary, but the remainderman appeared by counsel, and later filed objections to the administration of the trust estate by the trustee upon the following grounds: (1) That the trustee by the terms of paragraph " Tenth " of the will was restricted to investments in securities lawful for trust purposes under the laws of the State of New York. (2) That the trustee wholly disregarding such provisions, received and accepted from the executors, of which he was one, 250 shares of the capital stock of the Central Railroad Company of New Jersey, selling 100 of such shares February 11, 1930, and holding the remaining 150 shares to the date of his accounting as a part of said trust estate, with an alleged resultant loss of $45,750. The respondent further objected to any allowance to the trustee for any commissions or disbursements upon the accounting because of the alleged unlawful and negligent administration of the trust estate. Upon the filing of these objections by the respondent remainderman the trustee has instituted this proceeding for a construction of paragraph " Tenth " of the will of the decedent. The parties and appearances are the same as in the accounting proceeding.

It is the contention of the petitioner, in the first instance, that the remainderman, under the doctrine of *res adjudicata*, is bound by the decree of the surrogate made upon the judicial settlement of the executors' accounts in 1916, and cannot some twenty-three years later, object to the investments by the trustee in non-legals. It seems that this question should be determined in the accounting proceeding rather than in this one for a construction of the will. But the parties are the same in each proceeding, and counsel for the respective parties appearing have devoted a considerable portion of their main and replying briefs to this proposition. The life beneficiary is the only party in interest who has not appeared in either proceeding. Under all the circumstances it seems that no wrong can result to any party if the question is determined in this proceeding.

The decedent by her will, after directing the payment of debts and funeral expenses, disposed of all the real and personal property which she had received from her mother's estate. Following this she provided cash legacies for named individuals and institutions, and also gave to her nephew, Clark Williams, her books, pictures, clothing, ornaments and household furniture. Then followed the " Tenth " and final dispositive paragraph of the will, the first sentence of which reads: " I give, devise and bequeath the residue of my property both real and personal to my nephew, Clark Williams, including all legacies which may fail, in trust, for the use and benefit of my grand-niece, Mary Clark Kirkham, as long as she shall live." The " Eleventh " and last paragraph named the petitioner herein and the Astor Trust Company as executors with power to sell and lease any real estate. There was no direction in the will that the executors should sell and convert into cash the assets of the estate for purposes of distribution or otherwise.

The accounting by the executors in 1916 shows that all of the provisions of the will had been satisfied excepting the turning over to the trustee of such assets of the estate as might remain in their hands after the payment of commissions, allowances and the expenses of the accounting. The account further revealed that the executors about three months prior to the accounting had turned over to the trustee the major portion of the residue of the estate consisting of securities of the then value of $102,856.25. The executors were not bound to convert these securities into money for the purpose of turning over the residue to the trustee. Neither was he bound to refuse to accept anything but cash or securities legal for trust purposes. The will gave him as trustee the entire residue of whatever it might consist. It was for him to determine whether to hold the securities turned over to him, or sell the same and reinvest

the proceeds in accordance with the provisions of the will. The executors acted accordingly and the trustee received the securities, as well as the $805.67 which the decree directed be paid to him. The acceptance of the securities by the trustee, or the fact that he still held them at the time of the accounting three months after he received them, did not necessarily mean that he planned to hold them indefinitely or for any given length of time. The respondent objects that the executors turned over the securities to the trustee without complying with the provisions of section 268 of the Surrogate's Court Act. The provisions of this section do not apply when the will directs executors to turn over property of the estate to themselves as trustees. (*Matter of Sturgis*, 135 Misc. 1.) In *Matter of Kent* (173 App. Div. 563) it was held that section 2736 of the Code of Civil Procedure (now Surr. Ct. Act, § 268) had no application where the will authorized the delivery of specific property. In the case before us one of the executors was the sole trustee named, and the will gave him as such the " residue of my property both real and personal." The remainderman having been made a party to the accounting could have appeared, but did not do so. There was nothing in the citation served upon it to indicate that any matters would be adjudicated other than those common to a regular judicial settlement by executors. I believe the officers of the remainderman justifiably contemplated that the decree to be entered would contain the usual provisions approving the account, etc., and finally disposing of the residue in accordance with the will. The clause of the decree disposing of the $805.67 remaining in the hands of the executors directed the executors to " pay over to said Clark Williams, as trustee, the said remaining sum of Eight Hundred Five Dollars and sixty-seven cents * * * to be held by him as a part of the principal of said trust estate under the provisions of said will." As to the account rendered by the executors, which included a schedule showing the names, appraised values and the then value ($102,856.25) of securities already turned over to the trustee, the decree thereon provided that " the said accounts be and the same are hereby judicially settled and allowed, as filed." It contained no reference to the kind of securities in which the trustee might invest, and could contain none, as that question had not been before the court.

A determination as to kind of securities in which the trustee might invest was not incidental to the accounting by the executors, and the remainderman had no duty to appear in that proceeding if its officers were satisfied to leave to the court the examination of the account and the making of such decree thereon as he might deem proper, and directing a distribution of any remaining assets in

accordance with the provisions of the will. The will clearly defined the duties of the executors which were distinct and separate from those of the trustee, and the accounting referred to their administration solely as executors. The question as to the kind of securities the trustee might hold was not involved, litigated or decided, and the court is now confronted for the first time with that matter. (See *Matter of Trevor*, 119 Misc. 277.)

The same person is often named executor and trustee. His duties in each capacity overlap with the result that it is frequently difficult to classify certain of his acts as those of executor or trustee. In this case the will does not name Clark Williams and Astor Trust Company as *executors and trustees*, but only as executors, and Clark Williams is named as sole trustee. The executors and trustees are different entities. If this is true, then any objection by the remainderman upon the executors' accounting in 1916 as to the character of securities held by the trustee would have been premature, and should have awaited an accounting by the trustee. (See *Matter of Massimino*, 143 Misc. 119.) The petitioner stresses the latter case in support of his contention that the decree of 1916 is *res adjudicata* as to objections now interposed by respondent. But that case is distinguished from the instant case. There a trust company was named executor and trustee and its account showed the setting up of two separate trusts and of what securities each was composed. The special guardian for certain infant contingent remaindermen objected to the account, claiming that certain mortgages had been included in the trusts at face value, but were in fact worth less. The court, in passing on the report of the referee, which held the objections could not be made in that proceeding, said: " The trust beneficiaries are parties to this accounting. The make-up of these trusts is one of the matters embraced in the account. It follows, therefore, that objection must be made at this time as a decree settling the account as filed would approve the trusts as set up and be conclusive as against all parties to this proceeding. (Surr. Ct. Act, § 274.) " However, the special guardian in the *Massimino* case was objecting to the *value* of the securities, rather than the *kind*, which the executor had transferred to itself as trustee in setting up the trusts. In that case the will provided for the setting up of two trusts of $30,000 each, and by another provision disposed of the residuary estate. If the executor of such will, in setting up the trusts, had transferred to itself as trustee securities at a figure in excess of their real value, then any beneficiary of the trust could properly object to the accounting. But, assuming that the will had not indicated the character of investments available to the trustee,

would the parties to that proceeding be precluded at some future time from questioning the investment in non-legals by reason of the decree entered on the accounting? In the instant case the remainderman, having been made a party to the 1916 accounting, could have objected to any errors in the account or alleged irregularities on the part of the executors in administering their duties, whereby the residue would suffer depletion in *amount*. The trust was to be composed of " the residue " of decedent's " property both real and personal." The accounting was for the purpose of securing a judicial settlement of the accounts of the executors (and was so entitled), and giving all interested parties an opportunity to examine the same. No allusion to the taking over of the securities by the trustee nor that any decree should be sought in relation to the setting up of the trust fund was mentioned in either the petition or the citation in the 1916 judicial settlement proceeding. The decree contains no reference to the *kind* of securities in which the trustee may invest, but rather amounts and values thereof turned over to him. (See *Matter of Hoyt*, 160 N. Y. 607.) It is very doubtful if that was the time or the proceeding in which to raise the question as to whether the trustee should hold and invest in legals exclusively. Granting for the moment that the remainderman could have raised the question upon the accounting as to the propriety of the trustee investing in non-legals, it was not bound to do so. In *Matter of Whitbeck* (22 Misc. 494) the court said: " It would be misleading to reason from an ordinary judgment in a court of record to that of a decree in a Surrogate's Court. Not all matters which could have been litigated upon an accounting and settled in a surrogate's decree are barred from being put in issue on a subsequent accounting."

For the reasons as stated I am of the opinion that the respondent is not precluded by the decree of 1916 from asserting or claiming in this proceeding that the trustee was limited to legal investments.

The petition in this construction proceeding sets forth the facts substantially the same as hereinbefore stated and alleges that the trustee is informed and verily believes that the true construction of said paragraph " Tenth " does not limit him as trustee to investments in legal securities, but that by reason of the objections interposed in the pending proceeding for a judicial settlement, a judicial construction is necessary. Issue has been joined by the answer of the remainderman denying that said paragraph " Tenth " permits the trustee to hold or invest in non-legals, and alleging that it restricts the trustee to investments in legal securities only.

The paragraph of the will in question reads as follows:

" *Tenth*. I give, devise and bequeath the residue of my property both real and personal to my nephew Clark Williams, including all

legacies which may fail, in trust for the use and benefit of my grand-niece Mary Clark Kirkham so long as she shall live. And I direct my said trustee to keep the same invested as he may be advised, and to pay the income therefrom to the guardian of said Mary Clark Kirkham until she shall be twenty-one years of age, and to said Mary Clark Kirkham individually thereafter in semi-annual payments. Upon the death of my said grand-niece Mary Clark Kirkham I give, devise and bequeath the remainder of said trust estate, and I direct said trustee to pay and transfer the same to the Frederick Ferris Thompson Memorial Hospital of Canandaigua."

It appears that the question as to whether the trustee may invest in non-legals turns in the first instance upon five words used by testatrix, namely, " as he may be advised." Counsel for the respective parties appearing have submitted an imposing array of cases commenting on decisions construing wills. The court in *Matter of Storey* (134 Misc. 791) said: " These decisions are all, no doubt, excellent law as applied to the particular situations and testamentary wordings presented by their respective cases; but it is fundamental that beyond establishing general principles with which every one is familiar, decisions on matters of construction are of little aid in reaching a determination in a case presenting a different situation and a variant wording." (See *Matter of Durand*, 250 N. Y. 45, 53.) And so the difficulty in the instant case, by application of the well-known rules, is to arrive at the meaning of five words used by the testatrix, namely, " as he may be advised." Having established a trust to consist of all the residue of her estate, amounting to $103,661.92, the testatrix devoted a part only of one sentence in providing guidance to the trustee as to how the trust estate should be invested: " And I direct my said trustee to keep the same invested as he may be advised, and to pay the income," etc.

Undoubtedly the phrase " as he may be advised " is susceptible to various interpretations. The respondent insists that it is one of limitation binding the trustee to seek advice, particularly " legal counsel," *as a result of which he would of course be advised* " to invest the funds according to law." The petitioner with equal force argues that the phrase removes all restrictions and limitations, enabling the trustee to seek advice " *from his own experience* " or from any other source agreeable to him. It seems to me, if contemplating the phrase without reference to any other part of the will, both litigants are attempting to read something into the will by mere conjecture or speculation. This we may not do. (See *Livingston* v. *Ward*, 247 N. Y. 97, 107.) In this case, confronted with a phrase

susceptible to various interpretations, we may seek the intent of the testatrix in the context of the whole will. (*Matter of Storey, supra; Livingston* v. *Ward, supra.*)

It seems to me that a reading of the entire will in this case reveals the intent of the testatrix as expressed in the phrase " as he may be advised." Furthermore, it demonstrates that she was familiar with the law relating to investments by trustees. Three separate trusts are provided by the will. By paragraph " Fourth " the testatrix gave to the trustees of the First Congregational Society of the Town of Canandaigua the sum of $4,000 " in trust to be invested and kept invested by said trustees as provided by law for the investment of trust funds," and by paragraph " Seventh " she gave $1,000 to Ontario County Historical Society, " in trust, to be invested and kept invested by the Trustees of said society as provided by law for the investment of trust funds." When she came to the point of disposing of the residue of her property, " both real and personal," she gave it to her said nephew, Clark Williams, in trust for the use and benefit of her grandniece, Mary Clark Kirkham, during her lifetime, with the direction to the trustee " to *keep* the same invested as he may be advised." Here she dropped the explicit direction limiting investments to legals. Of course, if she had not added the words " as he may be advised " after the direction to " keep the same invested," the trustee in that case would have been limited to legals. But that would also have been true as to trusts set up in paragraphs " Fourth " and " Seventh " of the will, if she had there left out the words requiring investments in legals and had substituted no words in their place. Therefore, having left out the limiting clause as to investments in the " Tenth " paragraph, and used the phrase in question, it seems that she must have had a different intent as to the investment of this trust fund from that expressed in paragraphs " Fourth " and " Seventh." If she intended that all three trusts should be administered under a limitation as to the character of investments to be permitted, why did she adopt an entirely different phraseology in setting up the third trust?

The phrase, " as he may be advised," must have meant something to the testatrix and to the draftsman of the will. Certainly it does not expressly characterize the kind of securities the trustee is to hold or invest in, but it does tell him what to do in selecting them. While reposing confidence in him by naming him trustee she apparently believed the old adage that " two heads are better than one," and said in substance: " Keep this trust invested in such securities as you and those whom you consult on matters of investment may agree upon." To him she left the choice of choosing the advisers.

If his consultant happened to be a banker and agreed with him upon a legal investment, that act complied with the testamentary direction; if he conferred with a broker and agreed upon a non-legal investment, that too satisfied the intent of the testatrix. To my mind the phrase in question as here used connotes freedom of choice, rather than restriction, in making investments. In the recent case of *Matter of Carnell* (260 App. Div. 287) it was held that the trustees were restricted to legals, although the will provided: " The trustees of the special trusts herein and hereby created are hereby given and vested with the following rights, powers and duties: They may and shall, in the exercise of their sound judgment and discretion, change the nature of the investments originally selected by them to constitute the principal of said trust funds, and may, for that purpose and from time to time, sell and dispose of the same, replacing them with other securities purchased in the exercise of their good judgment and discretion. All such securities, however, composing the principal of any such trust, to be always well selected, and well secured securities, as distinguished from speculative securities or investments." But in that case the decision turned upon the last sentence of the quoted paragraph which states the kind of securities the trustee may invest in. Within that field of limitation, the court held, they were to exercise their " sound judgment and discretion." In the instant will no such words of limitation appear.

It is true, as contended by respondent, that if it was the desire of the testatrix to permit investments in non-legals, she could have made the direction in those words, but that would not have expressed her full intent which was, in my opinion, that he invest in either class of securities, *after securing advice* from such sources as he deemed reliable. On this point the respondent argues the words " as he may be advised " do not relieve the trustee from the duty to invest in legals, but *in addition* require him to take counsel before investing even in legals. This might be true were it not for the phraseology used by testatrix in providing the two trusts in the earlier part of her will. The statutes do not dictate, nor have the courts suggested, the wording to be adopted by the testator in instructing the trustee as to investments. In this case, as in others, the testatrix chose the words agreeable to her in expressing her desires as to all three trusts, or the draftsman used words or phrases which he believed correctly reflected her expressed wishes. When she expressed a desire that investments be made in legals, he consistently used the same wording in the two trusts at paragraphs " Fourth " and " Seventh," and when she expressed a different wish as to the trust in paragraph " Tenth " he used the phrase now under discussion, which, we must assume, he believed correctly reflected her intent in the matter. (See *Matter of Durant*, 231 N. Y. 41, 50.)

The late ROBERT F. THOMPSON, a justice of the Supreme Court, was the attorney who prepared the will for the decedent. That instrument is in his handwriting. He was familiar with laws relating to the investment of trust funds. Having expressed in clear language the desires of the testatrix as to the method of investing the funds of the trusts set up in the " Fourth " and " Seventh " paragraphs of the will, it is not reasonable to assume he would have used the words " as he may be advised " if she had expressed a similar desire as to the investment of the trust fund provided by the " Tenth " paragraph.

In determining the intent of a testator as to whether his trustee is to be confined to legals in making investments, it is also proper to consider the kind of securities held by the testator in his lifetime and which passed into the trust estate upon its inception. (*Dunck-lee* v. *Butler*, 30 Misc. 58; *Matter of McDowell*, 102 id. 275.) The appraisal value of the estate of the decedent upon the transfer tax proceeding was $141,540.47. Deducting from this amount real property, cash on hand, personal chattels and promissory notes, as appraised, we have left approximately $116,800, all of which was invested in non-legal securities, and such of them as remained to the residue of the estate were transferred to the trustee by the executors, as directed by the will, to be kept " invested " by him " as he may be advised." The trustee in receiving the residue of the estate accepted the same class of securities.

Further searching for the intent of the testatrix in the use of the phrase of paragraph " Tenth " of her will now under consideration, I think it also proper to consider that the trustee, who was a nephew of the decedent, was a man of· wide experience and familiar with financial affairs. Prior to the date of the testatrix's will he had been Superintendent of Banks of the State of New York and also Comptroller of the State of New York. It is evident that the testatrix reposed great confidence in her nephew from the fact that although she named him and the Astor Trust Company as executors of her will, she eliminated the trust company when providing the trust under paragraph " Tenth." She knew that the trust estate so created would include the major portion of all the property she possessed. She also knew that the administration of such trust funds would in all probability continue over a long period of years as her grandniece, the life beneficiary, was at the time of making the will a young girl about eight years of age. Yet she named Clark Williams as the sole trustee of this fund. It seems to me that she, in directing him to keep the estate funds invested " as he may be advised," had in mind his experience in financial matters and knew that a man of such training would not invest in any securities with-

out supplementing his own opinion by advice from such sources as he believed to be reliable.

" The construction given to a will by the members of testator's family is a circumstance entitled to weight." (Jessup-Redfield, [8th ed.] § 477.) Here the testatrix was survived by no husband, children or parents. The trustee, her nephew, who was very close to her, never interpreted her will as restricting him to investment of the trust funds in legals. The life beneficiary, her grandniece, has not appeared in either of the pending proceedings, and since attaining her majority has neither sought an accounting by her uncle, as trustee, nor a proceeding for the construction of the will. Neither the special guardian who represented her upon the executors' accounting in 1916, nor has any person in her behalf, ever raised the question as to the kind of securities held by the trustee. These facts, covering a period of twenty-three years, indicate her approval of the manner in which her uncle has administered the trust estate. (See Starr v. Starr, 132 N. Y. 154.)

Counsel for respondent contends that the words " as he may be advised " clearly indicate that the testatrix did not have sufficient confidence in the ability of the trustee to properly invest the assets of the estate unless he be limited to legals. In support of that argument he stresses the fact that at the time of the death of the testatrix her nephew was indebted to her in the sum of $5,000 as evidenced by two promissory notes given by him in 1911. The argument that she must have demanded and held these notes against her nephew because she did not have too much faith in his business ability is not well taken. The fact that the nephew gave, and the testatrix had accepted, two promissory notes evidencing a loan of $5,000 does not to my mind indicate any lack of confidence on her part. Mr. Williams is a business man and in that transaction he only followed regular business methods. In fact, the transaction indicates to me that the testatrix had great confidence in her nephew or she would not have made the loan in any event. So far as the record reveals she exacted no security but was willing to accept his written promise to pay, and the notes were paid with interest during the administration of her estate.

I see no useful purpose in discussing the many cases submitted by counsel in this proceeding, or the many others which I have reviewed. The rules devised to arrive at the intention are varied and the method of application infinite and changeable according to variations in each distinct case. " The question in expounding a will is not what the testator meant, as distinguished from what his words express, but simply — what is the meaning of his words?" (Jessup-Redfield, [8th ed.] § 477.)

Having carefully studied the will of the decedent and reviewed all the facts and circumstances, by the application of such rules of construction as I believe to be proper and pertinent, I have reached the conclusion that Clark Williams, as trustee under paragraph " Tenth " of testatrix's will, was not limited to legals in investing the trust funds, and I so hold.

Decree may be entered, on notice, in accordance with this opinion.