In the Matter of the Accounting of OLIVE B. SEAMAN et al., as Trustees under the Will of FRANK SEAMAN, Deceased.

Surrogate's Court, Ulster County, February 3, 1949.

*Budd, Bertine, Quencer & Hufnagel* for trustees, petitioners.

*N. LeVan Haver* for Philip Seaman and others.

*Harry H. Flemming* for Olive B. Seaman, respondent.

STERLEY, S. The trustees of the trust created by the will of Frank Seaman instituted this proceeding by a petition for the judicial settlement of an intermediate account of their proceedings. The petition also seeks for a construction of the will of the decedent. A citation was issued and served on all interested parties and answers have been filed by the trustees, Olive Brown Seaman, widow of the testator, and Philip Seaman, son of the testator, as individuals, and by the children of Philip Seaman. Neither of the answers specifically objects to any item of the accounting. In connection with a construction of the will, Mrs. Seaman has, however, alleged that a collection of old china contained in " The Hut " and specifically referred to in the account as filed is, and was at all times her absolute property. The issues raised by the pleadings involve the nature of the estates created by article first of the second codicil to the decedent's will. The evidence at the hearing, however, was limited almost exclusively to the question of the ownership of the china collection. The main issues before the court are, first, for a construction of article first of the second codicil to the decedent's will and, secondly, the property rights in the china collection and whether or not Mrs. Seaman may now claim that it has always been her individual property. This is primarily a dispute between the two trustees as individuals.

This court will first concern itself in relation to a motion made at the opening of the trial for the dismissal of the part of the petition which seeks a construction of the will. It was argued in support of the motion that the proceeding was essentially brought to determine the validity for the claim of the property and that such a proceeding should be brought under section 206-a of the Surrogate's Court Act. That section enables a person owning property held by an executor or trustee to institute a proceeding in the Surrogate's Court to compel delivery of the property upon proof of ownership. Doubtless, Mrs. Seaman could have had her claim determined by a proceeding under that section. Moreover, a construction proceeding is not a proper one in which to determine title to property. (*Matter of Farmer,* 99 Misc. 437.) Nor is there authority for the Surrogate to order the trustee to turn over property in a decree on a construction proceeding (Surrogate's Court Act, § 145).

The proceeding at bar is, however, an accounting as well as one for a construction of the will. In it one of the representatives of the estate has asserted a claim to property alleged to belong to the estate. Section 209 of the Surrogate's Court Act reads as follows: '' On the judicial settlement of the account of an executor or administrator, he may prove any debt owing to him by the decedent. Where a contest arises between the accounting party and any of the other parties, respecting property alleged to belong to the estate, but to which the accounting party lays claim individually; or respecting a debt alleged to be due by the accounting party to the decedent, or by the decedent to the accounting party, the contest must be tried and determined in the same manner as any other issue arising in the surrogate's court. * * * ''

In this case it is a contest between the accounting party and another party concerning property to which the accounting party lays claim individually, and it here appears that the contest should be tried and determined.

Section 209 specifically refers to executors and administrators but makes no reference to testamentary trustees and it might be argued that such section has no application to a claim against the trust estate by a trustee individually. However, assuming that section 209 does not have application to the claim herein before this court, there is authority to allow the Surrogate to determine the claim of the trustee in this proceeding without resort to section 206-a. In *Matter of Leary* (175 Misc. 254, 255, affd. *sub nom. Matter of Werner* v. *Reid,*

260 App. Div. 1000, affd. 285 N. Y. 693) the effect of section 206-a was stated by Surrogate DELEHANTY as follows: '' The precise text of section 206-a first was added to the Surrogate's Court Act by chapter 539 of the Laws of 1934 in effect on September first of that year. However, the statutes serve only to formulate with precision a procedure theretofore effectively used in the Surrogate's Court to control the conduct of fiduciaries. Prior to the enactment of the statute the court had power in an accounting proceeding to pass on claims adverse to the estate in relation to property claimed to be an asset of the estate.''

The enactment of section 206-a did not effect an exclusive procedure for determining title to property held by an estate (*Bradley* v. *Roe,* 257 App. Div. 1005) and, since all the interested parties are before the court, a determination of the present claim is within the power of this court to control the affairs of the estate and the conduct of the fiduciaries.

It is obvious that it is possible for this court to determine the claim to the china collection without resort to the construction of the will. However, the motion made at the opening of the trial for the dismissal of that part of the petition which seeks a construction of the will is denied for the reason that there are entirely independent questions concerning the nature of the estates created by the will which can be solved only by a judicial construction of the will.

Following this ruling the court herewith will concern itself with the construction of the effect of article first of the second codicil to the will of the said decedent which reads as follows: '' *First:* The real property at Yama Farms, Napanoch, in the Town of Wawarsing, in the County of Ulster, State of New York, conveyed to me by Yama Uchi Land Company by deed bearing even date herewith, being the parcel upon which is erected my dwelling house known as The Hut, a garage, three cottages and chicken houses, together with the contents thereof and all furniture and furnishings usually used therein, I give, devise and bequeath to my wife, OLIVE BROWN SEAMAN, for and during the term of her natural life, without bond, and upon her death, I give, devise and bequeath said property to my sons, JULIAN SEAMAN and PHILIP SEAMAN, share and share alike, or if either of them be then dead, the share of the one so dying to the survivor.''

Julian Seaman, one of the sons of the decedent, has since died.

In the light of that event this court declares that Olive Brown Seaman, the wife of the decedent at the time of his death, has

a legal life estate in the real and personal property devised and bequeathed in the above set forth article first of the second codicil to the will of the decedent. The fact that this property has been accounted for by the trustees is not inconsistent with the estate of the life tenant as section 40 of the Surrogate's Court Act subjects the conduct of a legal life tenant to the control and direction of the Surrogate's Court.

As to the remainder the gift is made to the remaindermen upon the death of the life tenant, and is to the survivor of Julian and Philip Seaman in the event either of the legatees be then dead. "Then" is taken to refer to the time of the vesting in possession of the remainder at the termination of the life estate. Julian Seaman being now dead, Philip Seaman is the survivor and the gift of the remainder is to him. (*Mullarky* v. *Sullivan,* 136 N. Y. 227.) There is no evidence of an intention in the testator that survival to the termination of the life estate was a condition to the vesting of the remainder in the survivor of the two named legatees and the will is construed as giving a remainder now vested in Philip Seaman The futurity imparted by the use of the phrase "upon her death" in making the gift of this remainder does not render the gift contingent upon survivorship at the termination of the life estate. The rule of construction has been well and ably stated by the Court of Appeals in *Connelly* v. *O'Brien* (166 N. Y. 406, 408).

Secondly, this court now concerns itself with the collection of old china contained in a building referred to as "The Hut" as claimed by the widow of the decedent, Olive Brown Seaman.

Frank Seaman died March 25, 1939. His will and the codicils thereto were admitted to probate on March 30, 1939. The will of the decedent named Mrs. Olive Brown Seaman and Julian Seaman, one of the testator's sons, as executors and trustees.

In April, 1940, the final account of the executors, namely, Olive Brown Seaman and Julian Seaman, was filed in the Surrogate's Court. In May, 1940, an affidavit supplemental to said account was filed. This affidavit included as an asset of the estate the real property known as "The Hut" and the personal property therein contained which affidavit was signed by Olive Brown Seaman and Julian Seaman, the executors then qualified, and included in the said personal property was the china collection. Appended in ink below the signature of Olive Brown Seaman, the claimant herein, but not in her handwriting were the following words "without prejudice to estate's ownership of china collection." On May 24, 1940, a decree was made

by the then Surrogate of Ulster County judicially settling the accounts of the executors and included in the summary statement as an asset of said estate was the value of " The Hut " and the personal property therein. There appears to be no objection made to this decree on the part of the claimant Olive Brown Seaman notwithstanding the fact that it appeared that she knew the value of the china collection and other items was included in the figures submitted. In the decree of May 24, 1940, a provision was made allowing commissions to the executors based on all of the funds and property making up the estate of Frank Seaman and included the collection of antique china.

In April, 1942, an accounting proceeding was again had after the death of one of the trustees and a son of the decedent, Julian Seaman. In this account " The Hut " and personal property contained therein were included at the same value as set up in the previous account and the schedules were signed by the claimant herein, Olive Brown Seaman, without any reservation or protest. On July 16, 1942, the then Surrogate of Ulster County signed a decree judicially settling the account. In the summary statement included in the decree the china collection was included. Transfer tax proceedings taken in the above estate seem to have included the property known as " The Hut " together with all of the personal affects and miscellaneous nonincome producing personal property therein contained. The schedules in the transfer tax proceedings were signed by the claimant, namely, Olive Brown Seaman. In the present account in this proceeding the china collection was specifically referred to in the account of the trustees and the issue of ownership was raised for judicial determination by Mrs. Olive Brown Seaman's answer. Apparently, it appears that there were many instances during the course of the administration of this estate when the value of the disputed items, namely, the china collection, was included within the estate without any objection on the part of the claimant, Olive Brown Seaman. That notwithstanding the above-mentioned decrees of judicial settlement which decrees seem to have included all of the personal property in the real property known as " The Hut " no objection or claim apparently was made by Mrs. Olive Brown Seaman, the claimant herein, with a possible exception that after the trustees' accounting heretofore mentioned Mrs. Seaman asserted her claim that the china collection was her personal property, but notwithstanding that contention, she

as one of the trustees or one of the executors signed the schedules and the account and the petition for the accounting which purported and did include the china collection and other personal property contained in the real property known as " The Hut ".

The effect of a decree of the Surrogate's Court in an accounting proceeding is clearly defined by statute. Section 80 of the Surrogate's Court Act reads as follows: " *Force and effect of a decree of surrogate's court*. Every decree of a surrogate's court is conclusive as to all matters embraced therein against every person of whom jurisdiction was obtained. To such decree there is attached all the presumptions pertaining to a judgment rendered by a court of general jurisdiction in a common law action."

Section 274 of the Surrogate's Court Act provides: " A judicial settlement of the account of an executor  *  *  *  is conclusive evidence against all the parties of whom jurisdiction was obtained  *  *  *  as to all matters embraced in the account and decree.  *  *  * "

The direct language of the statute and the many decisions which have cited the sections quoted make it clear that a valid decree in an accounting conclusively binds all parties to the accounting as to all questions embraced in the accounting. (*Matter of Man,* 181 Misc. 911 and cases cited therein.) The question before this court is whether the previous accountings embraced the property now in dispute and it is the opinion of this court that the previous accountings did embrace the property to which a claim is now being made and that in view of such a situation all of the parties to the accounting including the claimant herein, Olive Brown Seaman, are bound by the decrees judicially settling the previous accountings.

The claimant and respondent herein, Olive Brown Seaman, was one of the accounting parties. She was personally cited and served as an interested party on each accounting proceeding. The time to appeal from said decrees has expired and she is effectually precluded from raising this question now of her claim to the title of this property.

The decree settling the accounts of a testamentary trustee, acquiesced in by all parties and beneficiaries who were all made parties, is final and conclusive as to all matters embraced in the account and decree. (*Matter of Von Bernuth,* 127 Misc. 705.)

In *Matter of Von Bernuth* (*supra*) there was a similar situation. There a trustee under the will, who was also the

husband of the decedent, sought a construction of her will after the death of one of the beneficiaries of the trust and after an accounting had been made. The court (Surrogate Foley) said (pp. 707–708): " The trustee now by this proceeding seeks to procure a determination adjudging invalid the provisions in the will directing the addition of the fund held in trust for Constance upon her death in equal parts to the shares of each of the surviving sisters, and for a determination that in respect to the principal of the funds the testatrix died intestate. Of course were such a determination obtained the trustee individually would be entitled under our intestacy laws to a distributive share in the funds. His position here is not that of an impartial person seeking a construction of the will in his official capacity as trustee, but as an individual attempting to recover for his own personal benefit a further share in testatrix's estate. Having transferred the fund held in trust for Constance to the shares held in trust for the surviving sisters, and having himself requested a judicial settlement of his account confirming his doings in all respects, he is estopped thereby from now attacking the validity of his own acts. The decree entered December 7, 1925, settling his account as trustee, acquiesced in by all the beneficiaries under the will, who were made parties to that proceeding, is final and conclusive as to all matters embraced in the account and decree. (Surrogate's Court Act, §§ 80, 274; *Matter of Hoyt,* 160 N. Y. 607; *Bowditch* v. *Ayrault,* 138 id. 222; *Pray* v. *Hegeman,* 98 id. 351; *Matter of Schley,* 202 App. Div. 169; affd. 234 N. Y. 616; *Matter of Trevor,* 119 Misc. 277.) "

In view of the fact that the respondent Olive Brown Seaman was cited and served in each accounting proceeding and also the fact that she was serving in a representative capacity as executrix and trustee in which she took an active part she is estopped from now asserting the invalidity of the aforementioned decrees. In effect the said respondent and claimant, Olive Brown Seaman, now is asking this court to reopen every decree made by the court in which the value of the china collection has been included upon the ground that all has been done can be undone without harm to the persons involved. Such a step in the opinion of this court is in direct contravention of the provisions of section 80 of the Surrogate's Court Act.

Therefore, it is the opinion of this court that the said respondent and claimant, Olive Brown Seaman, is estopped and barred from making any claim to the china collection in this estate.

A decree may be entered accordingly and also a decree may be entered construing article first of the second codicil to the will of the said decedent according to the decision of this court heretofore set forth in this opinion.